## ZINK v. MILNER *et al.*

No. 2814.   Opinion Filed June 11, 1913.

Rehearing Denied September 23, 1913.

(135 Pac. 1.)

1.   **PARENT AND CHILD—Custody of Child—Transfer.** One parent cannot give away or exclusively intrust the custody of a legitimate minor child to another against the wishes or without the consent of the other parent.

2.   **SAME—Custody and Earnings of Child—Transfer of Right.** The father of a legitimate unmarried minor child is entitled to its custody, service, and earnings; but he cannot transfer such custody or service to any other person, except the mother, without her written consent, unless she has deserted him, or is living separate from him by agreement, or is dead.

3.   **SAME—Discretion of Court.** The mere fact that a child is happy and contented where he has been placed, and even shows a greater present affection for his great-aunt than for his own father, does not warrant a judge in refusing to recognize the rights of the father to the care and custody of the child. No reason has been adduced in this case for ignoring the father's rights other than the supposed happiness of the child, arising out of the situation. A judge has some discretion over the subject of the care and custody of the children; but it has to be exercised on more solid and substantial grounds than those which were advanced in this case.

(Syllabus by Robertson, C.)

*Error from District Court, Canadian County;*
*John J. Carney, Judge.*

Action by F. M. Zink against A. T. Milner and another to obtain custody of a child. Judgment for defendants, and plaintiff brings error. Reversed, and writ awarded.

*Herman S. Gurley,* for plaintiff in error.

*Clark & King,* for defendants in error.

Opinion by ROBERTSON, C. This case was tried in the lower court as an ordinary civil action between F. M. Zink, as plaintiff, and A. T. Milner and Jennie Milner, as defendants; the sole issue being the custody of Merton Spear Zink,

the minor son of F. M. Zink. The proceedings were treated by the trial court and the parties as one of *habeas corpus*, and despite the irregular manner in which the cause was instituted and carried through the lower court, and from thence to this court, we will also treat it as an application and petition for a writ of *habeas corpus*.

The facts of the case, as disclosed by the petition and the evidence, may be briefly summarized as follows: F. M. Zink and Mabel Spear were married at Enid, Okla., on May 22, 1907; on June 4, 1908, the child in controversy, Merton Spear Zink, was born to said union; on the 6th day of June, 1908, the mother died, and the defendant Mrs. Jennie Milner, without objection on the part of the father, but without any specific agreement, took charge of the child and has retained custody thereof ever since. At the time this action was commenced, the child was just past two years of age. The defendant Jennie Milner was an aunt of the deceased mother. At the time defendants took charge of the child, all parties concerned lived in Garfield county; later on, and in the fall of 1908, the defendants moved to Canadian county, taking the child with them. The father in order to be near his son, as he testifies, also moved to Canadian county in October, 1909. The Milners claim the right to the possession of the child only by virtue of an alleged oral contract made by Mrs. Milner with the child's mother prior to her death, and which, as detailed in evidence at the trial by Mrs. Milner (over objection of plaintiff), is as follows:

"Well, when I was a little past fifteen my oldest sister died and on her deathbed she gave me the child, this child's mother (she was a year and one month old at the time), and said to me as she died not to let any one take her from me. Well, I took her and was father and mother both to her, as far as worldly things were concerned, and raised her until she was 22 years old, and at that time she married Mr. Zink, and then a year later this child was born and all that time she—when my child was born she was ten years old and we made a contract with each other that whichever one died and left a child— Mr. Gurley: Objected to. Court: Overruled. Mr. Callaway: Just go ahead. We made a contract with each other that whichever one died and left a child the other was to take

it and raise it, and we lived with that between us until she
died, and, I think Mr. Zink knew that perfectly well. I don't
know whether that I ever went and told him personally, but we
mentioned it enough for him to know it, and when she knew there
was to be a child born she came to me at Hunter and told me
all about it, and said, 'If you feel that you don't want to take
the child of mine if anything should happen, I want you to see
to it that the child is put in a home until properly looked after:'
but she said, 'I know you will take it if anything should hap-
pen to me.' At the same time she wanted to know if I would
do the necessary sewing and work. I said, 'Yes,' and did every-
thing and carried it to Blackwell to her and went there two
weeks before she was sick, and we talked it over and again
renewed this contract between us. I asked her if she felt she
would die; she said not, 'but you never can tell what happens,
but if anything serious happens you are to take the child and I
don't want you to go out to work by the week to support it
because I think its father would support it, but I want you to
raise it.' Then it stood at that until she died. The day after
when I thought I wanted to go home I said, 'Mert, are you
willing I should take the child and do for it as its mother
wanted?' and he said, 'Yes, her word is law;' and with that
I made the preparations to take the child home, and I took it
home the day following that, and I have done for it just as
if it was my own born child in every kind of way I could
that love and kindness and double mother love could give it."

It was admitted at the trial, by the defendants, that the
father was a man of good moral character and a fit and proper
person to have charge of the child; that he was able financially
to provide for it; and that the Milners were no better able
to provide for it than the father. It was also shown that the
father had been appointed and qualified, by the county court of
Kay county, as the guardian of the person and estate of the
child. It is also shown by the record that the child had never
been legally adopted by the Milners, nor had any attempt to so
adopt it ever been made by them. The father denied that he
had ever given the child to the Milners, nor do they claim he
had done so, except by passive acquiescence to the terms of the
alleged oral contract hereinbefore mentioned as having been
made and entered into between Mrs. Zink and Mrs. Milner prior
to the death of Mrs. Zink.

The lower court was of opinion that the interests of the child would be subserved by leaving him in the custody of the Milners, and evidently based its conclusion on the fact that the strong bond of love and affection that had grown up between the child and Mrs. Milner rendered her better qualified to care for it than the father could possibly be. Indeed, this seems to have been the controlling idea in the mind of the judge, as may be seen from the language used in rendering his decision, a portion of which is as follows:

" * * * All the evidence in this case shows to this court at this time beyond peradventure that the defendant Mrs. Milner in this case is, as far as her limited circumstances will permit her, in every way fully qualified to take charge of this child, or any other child, that might be consigned to her care; that she has done as much for this child as the best of mothers could do; more than most mothers do. That all through her life she has manifested that motherly affection to a marked degree. The child is still in its infancy; it is still in that period of life when it needs a mother's most assiduous and careful attention, because it has not yet reached that age of maturity when its strengthened vigor and health, which comes later in life, when children are larger grown, can dispense with a mother's keen observation and careful attention; and it certainly yet needs the care and attention and careful observation of a mother's loving eye and attention. And, while the father in this case seems to have to a reasonable extent a father's love and affection for his child, he has not manifested any more than the ordinary father's affection, and the woman in this case, the defendant Mrs. Milner, as I said before, manifested to a marked degree a mother's love and affection and has shown herself in every way capable of ministering to the wants of children left in this motherless and orphan state. The court is fully and thoroughly convinced that the best interests of the child imperatively demand that the child should at the present time be left in the care and charge of the defendants. * * *"

The question of the custody of an infant child is one always fraught with danger and grave responsibilities. As a general rule this court will be slow to interfere with the judgment of a trial court in a case in which this delicate question is involved. The reasons for this hesitancy on the part of appellate courts are obvious, and it is unnecessary to enter into a discussion

of them at this time. Suffice it to say, however, that when, from the record before us, it is clearly apparent that an injustice has been done in a given case, this court, in the exercise of its corrective and superintending power, will not hesitate to enter upon an examination of the record, or to correct any error that, for any reason, may have been committed by the trial court.

From the statement of facts as above set out, and from the undisputed evidence in this case, we are clearly of opinion that the learned trial judge, by the consideration of palpably incompetent evidence, was led into grievous error. Had the alleged contract between the mother and Mrs. Milner, as detailed above, been kept from the mind of the court, we do not think the court would have reached the conclusion it did reach concerning the custody of this child. One parent cannot give away or exclusively intrust the custody of a legitimate infant child to another against the wishes or without the consent of the other parent. Therefore, admitting that such a contract as above mentioned had in fact been made, and that the alleged conversation with the deceased mother, necessary to establish the same, was admissible (neither of which contentions, however, can be sustained), yet those facts would not in themselves authorize or warrant a court in depriving the surviving parent of the custody of its child. In the instant case there was no competent evidence before the court tending to establish such a contract, and it was error of the highest prejudicial character to permit Mrs. Milner, over the objections of the father, to testify to the contents of an alleged oral contract between herself and the mother concerning the custody of the child, especially when said alleged contract was made and entered into long prior to the birth of the child.

The father denies that any such contract was ever made, and the burden of proving the same was upon the Milners, and there is not a word of competent evidence in the record tending to establish it. Courts, without doubt, have the right to inquire into the qualifications of persons, even of parents, in order to determine whether or not they are proper persons to be intrusted with the care, education, and control of infants, and it is within

the power of courts to deprive parents of the custody of their children; but the necessity for so doing must in all cases be clear and imperative. In the instant case the father is shown to be a man of good moral character, capable of earning a livelihood for himself and the child, and willing and anxious to have the child in his custody. Mrs. Milner, the child's great-aunt, is also a proper person to rear the child, but the father's rights are certainly superior and paramount to those of any other person.

Section 4899, Comp. Laws 1909 (Rev. Laws 1910, sec. 4368), reads as follows:

"The father of a legitimate unmarried minor child is entitled to its custody, services and earnings; but he cannot transfer such custody or services to any other person, except the mother, without her written consent, unless she has deserted him, or is living separate from him by agreement. If the father be dead, or be unable, or refuse to take the custody, or has abandoned his family, the mother is entitled thereto."

Thus it is seen that by express provision of statute the father is given the custody of his minor child, and he accordingly is charged with its care and education; and the fact that in this case Mrs. Milner has had possession of the baby for two years, and that a strong bond of love and affection has grown up between them, is not sufficient to deprive the father of the custody of his child. The record discloses that the father never abandoned the baby; on the other hand, it is shown that he in a way provided for it and at no time did he ever refuse to furnish it with anything needed, and when the Milners moved to Canadian county he followed them in order to be near his child.

As was said by the court in *State of Louisiana ex rel. Delia Kearney v. Steele,* 121 La. 215, 46 South. 215, 16 L. R. A. (N. S.) 1004, in discussing this identical question:

"The mere fact that the child is happy and contented where he has been placed, and even shows a greater present affection for his grandmother than for his mother, does not warrant a judge in refusing to recognize the rights of the mother to the care and custody of the child. No reason has been adduced in this case for ignoring the mother's rights other than the sup-

posed happiness of the child arising out of the situation. A judge has some discretion over the subject of the care and custody of children; but it has to be exercised on more solid and substantial grounds than those which were advanced in this case."

Cases and authorities sustaining this view might be numerously cited, but we think the rule enunciated is so plain, so just, and so generally accepted that it is unnecessary to cite others.

Under the facts of this case the father undoubtedly is entitled to the custody of his child, and the court below erred in refusing to so hold.

For the reasons hereinabove given, the judgment of the district court of Canadian county should be reversed, and the cause remanded, with instructions to grant the writ of *habeas corpus* as prayed for, awarding the custody .of the said child, Merton Spear Zink, to his father, F. M. Zink, and to enforce this judgment by such orders as may be necessary to give it full effect.

By the Court: It is so ordered.