This action was commenced in the county court of Kingfisher county by F. F. Cross filing a petition for writ of habeascorpus, setting out that Admiral Mason Cross (Butler), a minor four years old past, was unlawfully restrained of his liberty in Kingfisher county by Viola Popham, and that he was entitled to the care, custody, and control of said minor, and praying that the court so adjudge. The writ was issued, and the return made thereto by Viola Popham denied that said minor was unlawfully restrained of his liberty, and alleged that the minor was the son of the respondent and *Page 630 
William Butler, and that his name was not Cross, but that his true name is and was Admiral Mason Butler; that the father of said minor was dead, and that she was entitled to his care, custody, and control, and that she was able and willing to educate and care for him, and that Cross had no right, either in law or equity, to the custody or control of said child. A hearing was had, and the custody of the child was awarded to Cross. The mother appeals to this court from that order.
It appears from the testimony taken at the hearing that William Butler, the father of the child, died a few months before it was born; that its mother, Viola Butler, now Popham, plaintiff in error in this action, was without property, and was compelled to work for a living; that when the child was some four months old she obtained work in a hotel and attempted to care for it, but after several months' effort along that line found that she was unable to perform her work and care for the child, and upon the advice of her physician she arranged with Mrs. Cross, the wife of the petitioner, to care for him. Her testimony as to the arrangement with Mrs. Cross is undisputed, and is as follows:
"Q. Now, Mrs. Popham, why was it, what induced you at the time you made this arrangement with Mrs. Cross with reference to taking care of the baby? A. Dr. Caylor, and also his wife and several other ladies there that visited during the sickness, advised me to let some good lady take the baby and take care of it, and I let Mrs. Cross take the baby to take care of for me, and I paid her. Q. Why did they advise you to do that? A. They said I couldn't work and take care of the baby and give it the proper attention. Q. What was the agreement you made with Mrs. Cross? A. I took the baby down there for her to take care of for me, and she was to take care of the baby for me and I was to pay her whatever I was able. I was to clothe the baby and give her what I was able. Q. Did you make any agreement with Mr. Cross with reference to taking care of the baby? A. No, sir. Q. Or with reference to taking the baby and placing it in the care of his mother? A. No, sir; I did not. Q. After that time, did you work, and, if so, where did you work? A. After I took the baby down to Mrs. Cross I went out on a ranch and worked eight months. Q. What kind of work were you doing? A. Helping cook and take care of the house, general house *Page 631 
work. Q. How far from town? A. Twenty miles. Q. On a ranch? A. Yes, sir. Q. Did you pay Mrs. Cross at any time out of the wages you had? A. Yes, sir. Q. What amounts did you pay her? A. I paid her $20 at one time and $12 and $10 and $5. Q. Did you send it to her? A. I would send the money to her. There was one time I paid her $20 I gave it to her. She came to Canadian, and I went to town and gave it to her. Q. Now, Mrs. Popham, did you ever agree, or ever give your child to Mrs. Cross or Mr. Cross? A. No, sir; I didn't give my baby away to them. Q. Did you ever have any other agreement with Mrs. Cross in reference to your child; the only one was that with reference to paying the money? A. No, sir; I never made any other."
This testimony shows that Mrs. Cross, the wife of the defendant in error, undertook the care of the child for hire — an uncertain and indefinite amount that its mother could spare from her wages — and clearly refutes the idea of abandonment, or any intention on the part of the mother to relinquish or abandon her natural right to the care and custody of her child. It also appears from the record that after Mrs. Cross had cared for the child some two years she became afflicted with some mental disorder that rendered her incapable of caring for herself, much less the child, and that Mr. Cross then removed from Ellis to Kingfisher county, taking the child with him, and placed him in the care of his (Cross's) mother, with whom he also lived; that near the time Cross moved to Kingfisher county, Mrs. Butler, the mother of the child, married a man by the name of Popham, at Cannon City, Tex., and that he is a man of considerable means, and is willing and anxious that the mother of the child shall take it to their home, that he may support, maintain, and educate it; that Cross refused to give up the child; that the day this action was commenced Mrs. Popham, the mother, by consent of Cross, took the child for a drive, and that Cross, fearing that she intended to take it to her home in Texas, sued out the writ ofhabeas corpus.
It was said by Commissioner Robertson, in rendering the opinion of the court, in Zink v. Milner et al., 39 Okla. 347,135 P. 1:
"The question of the custody of an infant child is one always fraught with danger and grave responsibilities. As a general *Page 632 
rule, this court will be slow to interfere with the judgment of a trial court in a case in which this delicate question is involved. The reasons for this hesitancy on the part of the appellate courts are obvious, and it is unnecessary to enter into a discussion of them at this time. Suffice it to say, however, that when from the record before us it is clearly apparent that an injustice has been done in a given case, this court, in the exercise of its corrective and superintending power, will not hesitate to enter upon an examination of the record, or to correct any error that for any reason may have been committed by the trial court."
There is no doubt that Cross, having the care and custody of this child for a number of years, had become attached to him, and had a fatherly affection for him, and there is no complaint as to the care and attention he gave him; still his claim to the care and custody of the child cannot be successfully maintained against the claim of the mother. It appears from the record that the mother was better able to care for, maintain, and support the child at the time of the trial than Cross, and that she was a proper person to be intrusted with its care.
The trial court gave no reason for awarding the custody of the child to Cross and denying the claim of the mother thereto. The record does not show any justification for making the order appealed from. The mother has the right to the care, custody, and control of her boy, now that she is properly able to care for him, and no reason appears from the record why this right should be denied her. State of Louisiana ex rel. Delia Kearneyv. Steel, 121 La. 215, 46 So. 215, 16 L. R. A. (N. S.) 1004.
For these reasons the order appealed from should be vacated, and said cause remanded to the county court of Kingfisher county, with directions to enter an order awarding the custody of the minor, Admiral Mason Butler, to his mother, Viola Popham, and taxing the costs of the proceeding against the defendant in error.
By the Court: It is so ordered. *Page 633