Note.—See under (1) 3 C. J. p. 907, §806. (2) 3 C. J. p. 455, §266; p. 476, §300. (3) 3 C. J. p. 973, §868; 29 Cyc. p. 945. (4) 10 C. J. p. 1067, §1455. (5) 10 C. J. p. 611, §1039; 4 R. C. L. p. 1002; 1 R. C. L. Supp. 1255. (6) 10 C. J. p. 1159, §1522; anno. 34 L. R. A. 721; 37 L. R. A. (N. S.) 519; 5 R. C. L. p 33. (7) 10 C. J. p. 1060, §1452; p. 1155. §1519. (8) 4 C. J. p. 1140. §3139; 17 C. J. p. 1113. §445; 8 R. C. L. p. 675; 2 R. C. L. Supp. p. 638; 5 R. C. L. Supp. p. 480; 6 R. C. L. Supp. p. 521.

---

### BISHOP et al. v. BENEAR.

No. 18341.    Opinion Filed Sept. 25, 1928.

(Syllabus.)

1. **Parent and Child—Custody of Children —Legal Right of Parent Controlling Unless Welfare of Children Demands Other Custody.**

The parents have by nature, as well as by law, the legal right to the custody of their minor children. This right will always control the judgment of the courts, unless circumstances of great weight and importance connected with the necessary welfare of the child exist to overcome such strict legal right.

**2. Same—Wishes of Children to be Consulted.**

When resolving the question what will best subserve the interest and happiness of a child, its own wishes and choice may be consulted and given weight, if it be of an age and capacity to form a rational judgment. The wishes of children of sufficient capacity should be given especial consideration when their parents have for a long time voluntarily allowed them to live in the family of another.

**3. Same—Welfare of Children for Years in Care of Grandparents by Permission of Parent.**

Where a parent permits his minor children to live in the family of another, their grandparents, for many years, until the children have formed other ties, and a different direction has been given to their course of life, the courts may properly give weight to the condition of the children's present surroundings and all advantages which a continuance in those surroundings may reasonably be expected to give. (Chapsky v. Wood, 26 Kan. 650.)

**4. Same—Three rights of Interest Involved in Awarding Custody.**

In such cases three rights of interest are to be regarded: First, that of the parent; second, that of those who have for years discharged all the obligations of parents; and third, and chiefly, that of the child." (Following Chapsky v. Wood, supra.)

Error from District Court, Dewey County; T. P. Clay, Judge.

Petition for writ of habeas corpus by Grover Benear against William J. Bishop et ux. to secure custody of minor children. Judgment for petitioner, and respondents appeal. Reversed.

Tom L. Ruble and E. S. Collier, for plaintiffs in error.

Meacham & Meacham, for defendant in error.

CLARK, J. Grover Benear began this action in the district court of Dewey county, on the 4th day of May, 1925, by filing his petition for writ of habeas corpus for the custody of Grover C., William R., and Annice Benear, asking that the custody be transferred from W. J. Bishop and his wife, Anna Bishop, to petitioner.

For convenience, respondents in the trial court will be referred to as plaintiffs in error, and petitioner will be referred to as defendant in error.

Defendant in error's petition alleged that he was the father of Grover C. Benear, age 14 years, William R. Benear, age 12 years, and Annice Benear, age ten years.

The court heard this matter on the 8th day of May, 1925. Evidence was offered by both parties. The undisputed facts are that the mother of the minor children, whose custody is involved in this action, was the daughter of plaintiffs in error, William J. Bishop and Anna Bishop, and was the wife of Grover Benear. She departed this life in February, 1918.

Shortly thereafter defendant in error's sister came to live with him and care for the children, who were at that time of the ages of seven, five, and three years, respectively. She stayed a short time, and took the children to some relatives four miles distant from the home of Grover Benear, and left them.

On April 8, 1918, the children were given into the care and custody, by the father, Grover Benear, of plaintiffs in error, and at the date of the trial had been in their care and custody more than seven years. The court, upon the conclusion of the trial and after hearing the testimony, announced that he would take the matter under advisement for the reason that in the opinion of the court the custody of the children in the grandparents should not be disturbed at that time, but stated that in his opinion the father of the children would be entitled to their custody and that he would be granted the custody of the children by the court when he had for a reasonable length of time maintained a standard of living and conducted himself as indicated by the evidence that he lived and conducted himself subsequent to his second marriage. The second marriage, the record discloses, was entered into some 15 months before the trial. Thereafter, on the 7th day of September, 1925, the parties appeared before the court and defendant in error asked an adjudication of the matter giving him immediate custody of the children, which was by the court denied, and thereafter, on the 28th day of July, 1926, in open court the matter came on for final hearing, and it being agreed that defendant in error, the applicant, and also his wife, had been conducting themselves in the manner indicated by the evidence that they had conducted themselves subsequent to their marriage, and no further evidence being introduced, the court thereupon entered an order giving the custody of the said minor children to the father, defendant in error, as prayed for in the petition.

Thereafter a motion for a new trial was

filed, overruled, and the cause brought here for review.

The record discloses that the learned trial judge patiently heard all the testimony, examined the witnesses in open court, and, as we view the record, there is practically no dispute as to what the evidence shows. The evidence discloses that the father, upon the death of the mother of these minor children, when a sister came to his home and offered to stay and make a home for him and his children and take care of the children, who were at that time of tender years, that he absented himself from home, would leave them alone for considerable length of time day and night; that he associated with immoral people and was engaged and participated in immoral practices. The record discloses that this continued up until the time he and his present wife were married. The record further discloses that, subsequent to this marriage, which was just a little more than a year prior to this cause, he had conducted himself properly, but there was no attempt made on the part of the defendant in error to show that he had been conducting himself properly as a father should who has the care and custody of minor children during their infancy or during the time their characters are being formed. There is some evidence in the record, and it is not disputed by defendant in error, that on one occasion the defendant in error's wife, in the presence of plaintiff in error, Anna Bishop, the grandmother, who has the custody of the children, used vulgar and obscene language. The record further shows that defendant in error has a two-room house on a farm; that he had a wife and one infant child at the date of the trial, and with the addition of the three children in question, some of them now nearly grown, would make a family of six to reside in a two-room house. The record further discloses that the grandparents had only two children, one of which was the mother of the minors involved here, and the other a boy about grown; that they had taken exceptional care of the children, given them every opportunity for an education; had kept them in school, and during the time they remained with the grandparents they had given these children a moral and intellectual training, which unfortunately a great majority of children do not get.

The record discloses that Grover, the oldest child, at that time 14 years of age, had graduated from the 8th grade and made the best grade of any child in his school; that William R. Benear was in the 7th grade, and that the little girl's education had not been in any way neglected; she had been given the same opportunity that the boys had.

The record further discloses, and there is no testimony to the contrary, that plaintiffs in error were people of exceptionally good character, leading upright and Christian lives, and had the respect of all citizens in the community in which they resided. The record further discloses that the children whose custody is involved in this action, under the training of the grandparents, were considered by all the citizens of the community in which they resided exceptionally obedient and well-mannered children. These children in the future will be men and women and citizens of this state, and their welfare and education and training along moral and religious lines is of interest to every citizen of the state. The state is interested in the education of its young citizens, and to that end maintains schools at state expense. These children received their education along literary lines from the public schools maintained by this state, and their moral education from the grandparents, and the two combined tend to make good citizens. It would be useless for the state to furnish schools to educate a child if its moral welfare and its duty it owes to society to lead an upright, lawful life were neglected. Education without a moral training is a dangerous thing, and these children were very fortunate in receiving both.

The learned trial court erred in not taking into consideration the wishes of these children in determining their custody. In determining the custody of these children, three things must be considered: First, the right of the father; second, the right of the grandparents; and third, the welfare of the children; and the welfare of the child is the polar star for guidance; it is the paramount question to be decided by the court in fixing the custody of a child; it is the interest of the infant whose own judgment should be consulted when the infant has sufficiently matured for its exercise.

The remarks of the court in the record indicate the wishes of the children involved in this action were not considered. Testimony was offered that the father had taken the oldest boy by force from school one day. The court said:

"It does not seem to me that these things are very material. The question here before me and the only question I can determine, is that the father under the law is

entitled to the custody of the children unless by reason of his immoral conduct or his unfitness to take care of them or else for some other reason the court should say that he is not a fit person to have the custody of the children; that is all that is before me."

During the testimony of Mr. Bishop the question was asked:

"Q. Are you willing to let the children go if they want to? A. Yes, sir. Q. And live with him permanently? A. Permanently, if it is left to them, I will say yes. Q. Are you willing for that? A. If it is left for them, I am willing to let the children decide. The Court: It is not necessary to put that into the record. That would be a matter of compromise."

This indicates that the wishes of the children were not considered or deemed material in the trial of this cause by the trial court. In this. the learned trial judge was in error.

Section 6584, C. O. S. 1921. provides:

"In awarding the custody of a minor. or in appointing a general guardian, the court or judge is to be guided by the following considerations: First, by what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare; and if the child be of sufficient age to form an intelligent preference, the court or judge may consider that preference in determining the question."

20 Ruling Case Law, 602, in discussing the rights of custody of children, says:

"If the child whose custody is in question is of the age of discretion, that is, old and intelligent enough to form and express a rational opinion and desire as to its custody, such desire is admissible as a fact to be considered with other facts by the court in exercising its discretion."

We are not unmindful of the fact that a parent, by nature as well as by law, has a legal right to the custody of his minor children, but this strict legal right to the custody of the children must give way to the welfare of the child where for a number of years the parent has permitted the custody of his children in their grandparents, permitted their affections to grow up, as in the case at bar.

The Kentucky Court of Appeals, in Burke v. Crutcher, 4 Ky. Law Rep. 251, in the syllabus said:

"1. The legal right of a father to the custody of his child must. under the circumstances of this case, give way to the interest of the child.

"Appellant. upon the death of his wife, surrendered the custody of his daughter only two weeks old to her maternal grandparents, and made no claim to her custody until shortly before the institution of this action, more than five years after that time, and several months after his second marriage. It appears that the child has always been delicate and has become greatly attached to the grandparents, who are of high social standing, and financially able to rear and educate the child. Held, that the father has only a naked legal right which a court of equity ought not to enforce contrary to the interests of the child and against the equity of the grandparents, especially in view of the fact that the motive of appellant in seeking to recover the child seems to have been to gratify some spite against certain members of appellant's family, rather than because of his affection for his daughter, or that her interest might be advanced."

The Supreme Court of Kansas, in Chapsky v. Wood, 26 Kan. 650, in an opinion by Justice Brewer, said:

"1. The parents are the natural guardians and prima facie entitled to the custody of their minor child, as well as chargeable with the obligation of its support.

"2. A child is not in any sense like a horse or other chattel, subject-matter for absolute and irrevocable gift or contract.

' 3. A parent's right to the custody of a child is not like the right of property, an absolute and uncontrollable right. It will never be enforced where its enforcement will obviously destroy the happiness and wellbeing of the child."

The Supreme Court of Arkansas, in the case of Coulter v. Sypert, 78 Ark. 193, said:

"While the custody of an infant is generally awarded to the father, as being its natural protector, the courts are not bound to deliver the infant into the custody of the father or of any other person, but will investigate all the circumstances, and act according to sound discretion, as the welfare of the child appears to require."

The Supreme Court of California, in the case of In re Gates, 30 Pac. 596, said:

"Where it is to the manifest interest of a child to remain with relatives of her deceased father, who have always had the care of her, and who are amply able and desirous to provide for her maintenance and education, while her mother has no means to support her unless they are furnished by her husband, a man of small means, and the child is deeply attached to such relatives, while she looks on her mother as a stranger, a writ of habeas corpus for the possession of the child, issued on petition of the mother, will be discharged."

The Supreme Court of Nebraska, Stanford L. Sturtevant v. State of Nebraska ex rel. Havens, 15 Neb. 459, said:

"Where an infant child, eight months of age, is in the custody of its grandparents, its mother being dead, and it appearing that it would be more for the benefit of the infant to remain with them than to be put under the care of the father, the court will refuse to direct the infant to be delivered to him.

"In such a controversy for the custody of the child, the order of the court should be made with a single reference to the best interests of such child."

The Supreme Court of Indiana, in the case of Jones v. Darnall, 103 Ind. 569, said:

"In a habeas corpus proceeding by a father to obtain the custody of his infant child from its maternal grandparents, the welfare of such child is the paramount consideration, and the order of the court must be made accordingly."

In controversies of this character, three matters are to be regarded: The rights of the parent, the rights and interests of the person or persons to whom the care and custody of the infant child has been given by the parent, and the welfare of the child; and of these three, the last mentioned is the matter of primary and paramount importance. If the father, by agreement, surrenders the care and custody of his child to another, such surrender is not absolute and irrevocable; but, if a contention arises in the courts with reference to such relinquishment, much will depend upon the characters and habits of the contending parties, the fact whether the reclamation is sought within a short time or after the lapse of years, and the circumstances of the particular case. All other considerations, however, will be subordinated to the interest and welfare of the child.

From this record we must conclude that the learned trial court overlooked, in awarding the custody of these children, and did not consider, their wishes in the matter. The record shows they were children of unusual intellectual attainments; their testimony indicated they were intelligent and thoughtful children. It has been practically three years since the trial of this cause; the court at that time was unwilling to surrender the custody of these children to the defendant in error, but later, without the introduction of any testimony, did enter his order giving the children to defendant in error. No doubt many changes have occurred since the trial of this case; their grandparents and the children's position may be changed; the father's position may be changed. The children have grown older and are in better position to express an intelligent preference, and under all the facts

and circumstances, we are of the opinion that the judgment of the trial court should be reversed, and a hearing had, and that the court should make an award of the custody of these children, taking into consideration the wishes of the children and their interest and welfare.

MASON, V. C. J., and PHELPS, LESTER and HEFNER, JJ., concur. HUNT, J., dissents.

---

HUNT, J. (dissenting). I have carefully read the entire record in this case, and am unable to agree with the majority opinion.

It is elemental and fundamental that a parent is entitled to his child, and a child is entitled to his parent. The rule runs through all nature. It is the heritage of parenthood and of childhood. The rich, the poor, the cultured and illiterate all are moved by this common impulse—which is the salvation of the race—to have and to hold their own. In the law the authority of the parent to have possession and control of his child knows no limit save only that such authority must not be so exercised as to endanger the child's safety or morals.

Further, the law says the custody of the child rests in the discretion of the court. McKenzie v. State, 80 Ind. 547; Smith v. Bragg, 68 Ga. 650; Stringfellow v. Somerville, 95 Va. 701, 29 S. E. 685. The exercise of this discretion will not be disturbed on appeal except in case of its manifest abuse. Washaw v. Gimble, 50 Ark. 351, 7 S. W. 389; Beall v. Bibb, 19 App. Cas. (D. C.) 311; Breckenridge v. Breckenridge, 103 Okla. 261, 229 Pac. 774; Zink v. Milner, 39 Okla. 347, 135 Pac. 1; Hedtke v. Kukuk, 93 Okla. 264, 220 Pac. 615; Jamison v. Gilbert, 38 Okla. 751, 135 Pac. 342.

In the case at bar, the trial court listened with characteristic patience to a volume of evidence, both as to the fitness and unfitness of the petitioner to raise his children and as to his ability to support and maintain them, and, at the conclusion of the first hearing, the case was suspended and taken under advisement for a period of more than a year in order that these parties might be under observation, and also that any further proof which might be found might be introduced; and at the conclusion of this period, the case was again reopened for proof and there was no proof, save only the stipulation of the respective attorneys of record to the effect that the life and conduct of petitioner and his wife during the interim was in all respects proper.

The parties and witnesses were before the court, who, it seems, took extraordinary care to arrive at a proper conclusion, and he found that the petitioner and his wife were fit and proper persons to have, and should have, the custody of these children. It is idle for this court to assume in the circumstances that it has a better insight into the facts than the trial court had.

I am unable to follow the reasoning of the majority opinion to the effect that this father should be deprived of the custody of his children because he lives in the country in a two-room house and the grandparents live in town in a little better house. It perhaps is unfortunate that he, like a great many others, has not a better house, but it certainly is not for us to say what he must have, and to undertake to lay down a standard of living for him before he will be allowed the custody of his own children, when this record abundantly shows, as was found by the trial court, that he is a fit and proper person to have them. All the testimony is to the effect that since January, 1924, he has been sober and industrious and amply able and willing to properly provide for his children. Of course, the welfare of the children should be and will be considered in all cases of this kind, but first right of the parent to have and to hold his own is not to be disregarded. Were it otherwise, a wealthy relative might conclude that, because his less fortunate kinsman was unable to furnish his children a large and commodious home within which to live and to give them other advantages, he would go into court and obtain the custody of the children because he could provide them with greater advantages. Such a rule, of course, would not be sanctioned by any court, but, if I interpret the majority opinion correctly, it certainly leads far in that direction. No parent should ever be deprived of the custody of his own children unless it clearly appears from the evidence that he is wholly unfit or unable or unwilling to support and maintain them. A wide discretion is necessarily imposed upon a trial judge in matters of this kind.

I concede that prior to the second marriage of the father in January, 1924, this record discloses some improper and immoral conduct on his part, and I do not want to be understood as approving or condoning such conduct. However, a careful examination of the record discloses no evidence whatever of any improper conduct on the part of this father from January, 1924, up to the time judgment was rendered herein by the trial court in July, 1926, but, on the contrary, as hereinbefore pointed out, there are many witnesses who testified that petitioner is a steady, industrious farmer, and associates with and is accepted by the best people of his neighborhood; that he attends religious services, and, without exception, these witnesses bring no evil report as to him or his wife since marrying. So much proof was offered as to the correct life of petitioner and his wife since their marriage that the court acquiesced in the suggestion that the introduction of further proof along that line was unnecessary. The petitioner's witnesses are also of one opinion, that he is not only able, but a proper person to have the care and custody of his children.

The learned trial judge in this case has graced the district bench of this state for a number of years, is a man of mature years, and has had a wide experience, and doubtless has had to determine the very question here presented in numerous other cases of this character. In my judgment, he has correctly interpreted the law involved herein, and the facts as disclosed by the record abundantly sustain his findings, and I am therefore not willing to disturb the same.

Unless we can say that the judgment of the trial court is clearly against the weight of the evidence, it is our duty, under the well-established rules of this court, to affirm the judgment. The judgment of the trial court, in my opinion, is not only not against the clear weight of the evidence, but is strongly supported by it, and the record fails to disclose any abuse of discretion or manifest error on the part of the trial court, and the judgment should, therefore, in my opinion, be affirmed.