**SHERRICK et ux. v. BUTLER.**

No. 26600.   Jan. 21, 1936.

Hickman & Ungerman, for plaintiffs in error.

Leo J. Williams and M. J. Parmenter, for defendant in error.

PHELPS, J. This is a habeas corpus action by a mother to regain custody of her child, against the paternal uncle of the child and the wife of said uncle. In 1927 the child's father was adjudged insane and committed to a state hospital, where he is still confined, his condition being incurable. The child was then about two years old and its mother was unable to care for it and her other child. She placed it in the care of the defendants, and later entered into a written contract with them to the effect that they should have its care and control, and she therein attempted to transfer all of her right to possession and control of the child to the defendants. It appeared that the father of the child being insane, adoption was impossible or impracticable, or that at least was the theory of the parties. At any rate, there was no adoption.

In 1933 the mother filed her petition in the district court, seeking custody of the child. The defendants filed their response, in which they set forth the above-mentioned contract. Much evidence was taken, and the hearing culminated in a judgment of the district court granting the plaintiff the permanent custody of the child.

In appealing, the defendants base their argument almost entirely on the assertion that the contract is valid and enforceable and that the mother should be estopped from denying its validity and enforceability.

The well-nigh universal rule, and certainly the rule in Oklahoma, is that such a contract has no weight, force, or effect whatsoever if against, and as against, the actual welfare of the child. A minor child is not the subject of barter and sale, such as a horse or an automobile, and no contract placing its custody in the hands of others

than its parents will be enforced by the courts when the facts of the particular case develop that the child's welfare is best subserved or assured in the custody of its natural parents.

One of our earliest decisions on this subject was Zink v. Milner, 39 Okla. 347, 135 P. 1. In the first syllabus of that case it was said:

"One parent cannot give away or exclusively intrust the custody of a legitimate minor child to another against the wishes or without the consent of the other parent."

It is of course obvious that the consent of the child's father was not obtained in the instant case. However, that point is not so controlling as is the principle that the interest of the public, and of the state, in protecting minors is considerel paramount to the contract rights of individuals. In the Zink Case, supra, there was some contention that the parent had contracted away the custody of the child. This court, speaking on that point, said:

"Admitting that such a contract as above mentioned had in fact been made, and that the alleged conversation with the deceased mother, necessary to establish the same, was admissible (neither of which contentions, however, can be sustained), yet those facts would not in themselves authorize or warrant a court in depriving the surviving parent of the custody of its child."

In Popham v. Cross, 41 Okla. 629, 137 P. 673, the evidence was conflicting as to whether the mother had agreed to leave the custody of her child in another. The judgment of the lower court did not reveal whether it was found as fact that such alleged contract existed. However, the trial court denied the mother's application for a writ of habeas corpus against the custodian of the child, and this court reversed that judgment and awarded the mother the custody, using the following language:

"The trial court gave no reason for awarding the custody of the child to Cross and denying the claim of the mother thereto. The record does not show any justification for making the order appealed from. The mother has the right to the care, custody, and control of her boy, now that she is properly able to care for him, and no reason appears from the record why this right should be denied her."

There was no evidence offered by the defendants in the instant case to establish that the mother was unable or unfit to care for her child. There was some question of an

540

irregularity in the obtaining of her divorce from the child's father, a few years prior to the trial, but the record in this respect is not so clear or satisfactory as would warrant placing upon her such stigma as would render her unfit to care for the child. In this connection, it was stated by this court in Jamison v. Gilbert, 38 Okla. 751, 135 P. 342, 47 L. R. A. (N. S.) 1133, that:

"The unfitness which will deprive a parent of the right to the custody of his minor child must be positive, and not comparative; and the mere fact that his minor child might be better cared for by a third person is not sufficient to deprive the parent of his right to its custody. It is not sufficient, to establish the unfitness of a parent for the custody and control of his minor child, to show that he has some faults of character or bad habits; it must be shown that his condition in life or his character and habits are such that provision for the child's ordinary comfort and contentment, or for its intellectual and moral development, cannot be reasonably expected at the parent's hands."

Incidentally, in the case last quoted above, the child had been "given" by the father to its grandparents at an early age, and that fact did not prevent this court from reversing the judgment of the trial court, and awarding custody of the child to its parent.

It is within the power of courts to deprive parents of custody of their children, but the necessity for so doing must be great and imperative. Zink v. Milner, supra; Breckenridge v. Breckenridge, 103 Okla. 261, 229 P. 774.

After reading the entire record in this case, we are convinced that the judgment of the trial court was entirely in harmony with the best interests of the child. Many witnesses testified to facts indicating that the defendants unduly restricted the child's activities or presence in connection with the reasonable visitations of its mother. It appears clear from the record that the defendants seldom if ever permitted the child's mother and other relatives to talk with it or have it even temporarily in their custody, and this in spite of the fact that the contract had provided for the mother the right of reasonable visitation. The defendant Otto E. Sherrick, husband of the defendant Margaret L. Sherrick, testified that he would not take the child to see its own grandmother. who lived in the same town. The general impression which we obtain from his testimony is that he and his wife have an intention to permanently separate the child from its relatives to the limit of their ability, yet the

defendants offered no evidence of immorality in those relatives, or that the child would be harmed in any manner by allowing it that reasonable association with its relatives as is its right.

In short, we say that not only is there sufficient evidence in the record to sustain the judgment of the trial court, but that the evidence is such that any other judgment would have been clearly against its weight and contrary to law.

The judgment is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and RILEY and BUSBY, JJ., concur.