NEET v. NEET.

No. 32169. April 1, 1947.

*179 P. 2d 120.*

Frank Leslie, of Tulsa, for plaintiff in error.

John L. Ward, Jr., of Tulsa, for defendant in error.

RILEY, J. This is an appeal from a decree awarding the custody of a minor child. In March, 1941, a decree of divorce was granted to William L. Neet from his wife, Josephine Edna Neet; the custody of the two minor children, Helen Jean Neet (then 13 years of age) and Ruth Olin Neet (3½ years of age), was awarded to the mother.

In 1942 the father petitioned for a modification of the decree as to the custody of both children. By agreement of the parties, the custody of the older child was given to her paternal grandmother. Custody of Ruth Olin was not then changed.

On December 21, 1943, the father filed another application for modification of the decree as to the custody of Ruth Olin Neet. He alleged the mother, Josephine, had become an habitual drunkard; that she grossly neglected the child, Ruth Olin. Petitioner prayed that the custody of Ruth Olin be awarded to the paternal grandmother. Josephine denied the allegations. A hearing was had in January, 1944. The court took the matter under advisement. On December 22, 1944, the father filed a third application for change of the child's custody. He alleged the mother drank intoxicating liquors to excess and in the child's presence; that she also caroused with other persons; that the mother had caused the child to miss 21 days of school during one semester; that she had left the child at home without food, and engaged in immoral conduct in the presence of the child.

Without a hearing and over the protest of the mother, the court awarded the temporary custody, pending a hearing, to her paternal grandmother, Mrs. Cora Neet. The court directed the sheriff forthwith to enforce the order. The court enjoined the mother from interference. The sheriff executed the temporary order as directed. Hearing on the application was set for January 10, 1945.

Josephine filed a verified response denying the allegations of the application and pleading that the child was kept out of school because of illness.

A hearing was had January 10, 1945. The court awarded the permanent custody of the child to her paternal grandmother, Mrs. Cora Neet. The mother was given right of visitation and custody on Saturday of each week. The father was relieved of the child's support and maintenance. The mother appeals.

It is contended, on appeal, that the evidence fails to justify the court in taking the custody of the child from its mother.

The statute, 30 O.S. 1941 §11, provides that in awarding the custody of a minor child, the court or judge is to be guided by two considerations: First, by what appears to be for the best interests of the child in respect to its temporal, mental, and moral welfare, and if the child be of sufficient age to form an intelligent preference, the court or judge may consider that preference in making the award; second, as between parents adversely claiming the custody, neither parent is entitled to it as a matter of right, but other things being equal, if the child be of tender years, it should be given to the mother; if it be of an age

to require education and preparation for labor or business, then to the father.

The paramount consideration is the temporal, mental, and moral welfare of the child. Morris v. Morris, 81 Okla. 222, 198P. 70; Bishop v. Benear, 132 Okla. 116, 270 P. 569; Hathaway v. Hendrix, 186 Okla. 712, 100 P. 2d 444; Richards v. Christy, 150 Okla. 221, 1 P. 2d 168; Ex parte Yahola, 180 Okla. 637, 71 P. 2d 968; Wallace v. Wallace, 145 Okla. 303, 292 P. 1111.

The record in this case discloses that for a year before the hearing on the first application, the mother had the general custody of the child. On Saturday morning the child would be taken, usually by the older sister, to the grandmother's home, and returned to the mother on Sunday evening. The mother's home consisted of a seven-room house. She rented the front part and lived in the rear with the child. The father paid $50 per month for the support of the child. About five months before the hearing, the mother worked at a filling station servicing automobiles, for which she drew $15 per week. Her hours were from 9 o'clock in the morning until about 7 p.m. The child attended school. The mother prepared the child for school, before going to work; the child had lunch at school. On Saturday and Sunday the child was with her grandmother. The child got out of school at 3:30 p.m., at which time she was cared for by a neighbor girl, employed by the mother, until the mother returned from her work. The mother prepared the evening meals and the child was usually put to bed at the hour of nine.

The first application charged the mother with having become an habitual drunkard and gross neglect of the child. It was charged the mother caroused and drank beer, an intoxicant, to excess.

To support these charges, applicant presented the older daughter as a witness. She was then 15 years of age. She testified that on one occasion, six weeks before the hearing, on a Sunday eve-

ning when she was driving with the younger sister home from her grandmother's, in an automobile, she passed her mother on the street, and observed her mother's condition and that she was staggering and drunk. The witness admitted, however, that her mother had a defective ankle which interfered with her walking, and that she did not like her mother. No reason for dislike was stated.

Applicant also produced as a witness one A. L. Meyer who testified that he was a private investigator employed by applicant; that he observed the actions and conduct of Josephine on Saturday night, December 11, 1943; that about 8:45 p.m. he saw Josephine in the Boston Beer Garden, where she remained until 11:30 p.m.; that she was seated at a table with a lady and three men and they had seven beers; that the parties went from the Boston Beer Garden to the North Cincinnati Bar, where they had two beers. The party then returned to Josephine's home, arriving at 2:10 a.m. The witness, during the time, had five beers.

Orville N. Pash, also employed as a detective, accompanied on the occasion the witness Meyer. His testimony was in corroboration of the investigator except that this witness enjoyed seven beers but suffered no intoxication. Neither of the witnesses knew anything about Josephine's conduct at any time other than the evening of December 11, 1943.

The father, as applicant, had no opportunity to observe Josephine's conduct.

Josephine admitted her presence on December 11th in the beer garden and the bar. She denied that she was ever drunk or that she spent any support money for intoxicating liquors.

Six businessmen testified that they were regular customers of the filling station where Josephine worked; that she serviced their cars from two to four times per week; they never observed

her to be under the influence of intoxicating liquors; she rendered service in an efficient manner.

D. C. Wise was in the grocery business; he saw Josephine, as a customer, almost every day; she paid cash for her groceries, and never appeared to be under the influence of intoxicating liquor.

At the second hearing, from the school attendance record, it appeared the child had been absent from school 14½ days out of 83. On December 12, 1944, a complaint was made to the city juvenile court that the child was neglected. The source of the complaint was never traced, but the resulting investigation by Mary K. Burns, assistant probation officer, showed the stated school attendance record and an interview with the mother. On December 22, 1944, the probation officer interviewed Josephine and detected the odor of liquor on her breath. Josephine explained the absence of the child from school in that the child suffered from the croup.

The investigation showed that after the former hearing the mother no longer employed the neighbor girl to attend the child after school. Instead, the child thereafter came directly from school to the service station and stayed with her mother until the station closed. Josephine then earned $20 per week. Each Friday afternoon she took the child to a movie and after working hours returned the child home. On Saturdays the child was permitted to make the usual visits to the home of the paternal grandmother.

There was no showing of the mother's immoral conduct, if any.

The evidence wholly fails to substantiate the charge that the mother had become or was an habitual drunkard. The trial court, in announcing decision, said:

" . . . I want this mother to know I don't think she is bad or anything of that sort; . . .".

These are: "The short and simple annals of the poor". Gray.

The order is not sustained by the weight of the evidence.

"Parental affection is a child's richest heritage, it is nature's shield against harm . . . and should be strongly weighed . . . before . . . life and character be consigned to others. . . . decrees of this character are rarely made final, but may be modified from time to time to fit the requirements of the child's welfare." Morris v. Morris, supra.

William L. Neet, the father, appears to have a financial interest on account of the support money he was required to pay. He had made three applications for this child's change of custody. In each instance he has requested the court to relieve him from the payment of support money. He has made unfounded charges of immorality against the mother of the child. The unfounded charges formed a false basis for the order of temporary custody made without a hearing.

Nor was the permanent order justified by the record. But the decree was rendered more than two years ago. The child is now nine years of age. Conditions may have materially changed since the decree was entered, a modification of the decree may now be proper. A court of justice would not fail to make a proper order based upon the conditions as they now exist.

Reversed.

OSBORN, WELCH, CORN, and GIBSON, JJ., concur. HURST, C.J., DAVISON, V.C.J., and BAYLESS, J., dissent.