In the Matter of Carol, Raymond, Ray, Frankie and Mary Ann SWEET, Juveniles.

Harry SWEET and Margaret Sweet, Plaintiffs in Error,

v.

Mrs. H. A. JOHNSON, County Juvenile Officer, Defendant in Error.

No. 37602.

Supreme Court of Oklahoma.

Oct. 22, 1957.

Paul R. Haunstein, Enid, for plaintiffs in error.

Dennis L. Pope, County Atty., Enid, for defendant in error.

BLACKBIRD, Justice.

This appeal involves the custody of Carol, Raymond, Ray, Frankie and Mary Ann Sweet, minor children of the plaintiffs in error. Harry and Margaret Sweet, of Enid, Oklahoma. Ray and Raymond are twins, 11 years of age, Frankie will be 8 next December, and the girls, Carol and Mary Ann are approximately 10 and 7 years of age respectively.

During the 1954–1955 school term, all of the children, except the youngest, attended public school at North Enid. Due to the children's condition, as regards personal hygiene and perhaps partially due to dissatisfaction with them on one or two other grounds, the school principal reported them to the school board, and subsequently, after an investigation by Mrs. Johnson, the County Juvenile Officer, followed by proceedings in the Juvenile Court, the older children, by court order entered in said proceedings on June 1, 1955, were temporarily taken from their parents and

placed in the custody of the Child Welfare Division of the State Department Of Public Welfare for a period of 90 days, within which the Sweets cleaned and improved their home. After this was done, the Juvenile Court, at the end of said 90-day period, entered another order restoring the children's custody to their parents. Besides a rather general cleaning and renovating of the house, conducted under the supervision of Mrs. Johnson, Mr. Sweet, who is regularly employed as a railroad section laborer, at $1.64 an hour, or $250 to $260 per month, obtained a 90-day leave of absence and expended $1,200 adding an extra room to the house so that his sons and daughters would have separate bedrooms. Thereafter, Mr. Sweet moved his family to Helena, Oklahoma, so that those of school age might attend school there during the 1955–1956 school year; and, during this period, he commuted on weekends between his work at Enid and his family at Helena. At the end of said school term, in the spring of 1956, the family returned to their home in Enid. Thereafter, on or about August 15, 1956, the boys, Ray and Frankie, were taken into custody by the Enid police, and confessed to stealing part of $35.20 reported missing from Enid's Becker Service Station. When Mrs. Johnson learned of this, she went to the Sweet home, talked to the boys' mother, and thereafter instituted the present action to have all of the above-named children adjudged to be "dependent and neglected, or delinquent * * *".

In the petition she signed and filed for that purpose, Mrs. Johnson alleged, as grounds for such adjudication, that the minors involved: " * * * appeared to be dependent and neglected, or delinquent children in this, to-wit: not receiving proper parental care, picked up for stealing and mother says she can't keep children at home." At the trial, before a 6-member jury, no evidence was introduced to show that Mr. Sweet did not earn, or expend, sufficient funds on the children to supply them with all of the necessities of life. In fact Mrs. Johnson, hereinafter referred to as the petitioner, did not claim he was derelict in that respect, or that, from a financial standpoint, the children were public charges. Her entire objection, as far as it can be ascertained from her testimony, seems to have been to "the manner in which they are fed and clothed and took care of." Over the objection of counsel for the respondents, said petitioner was allowed to testify in considerable detail as to the facts disclosed by her investigation, previous to the 1955 proceedings, concerning the dirty and unsanitary condition of the Sweet home, as well as the children. In addition, school authorities were allowed to testify to certain facts tending to show the children's lack of parental care, all of which occurred prior to the afore-mentioned Juvenile Court proceedings and prior to the 90-day period in which respondents, by the aforesaid orders entered therein, were temporarily deprived and afterwards restored to custody of the children. The evidence introduced on behalf of the respondents tended, in the main, to show that those conditions had not existed since the custody restoration, or at the time of the trial here involved. The testimony of the Sweets' daughter, Carol, showed that Mrs. Sweet experienced no trouble in keeping her at home, and she expressed the earnest wish that she not be taken from her parents.

After the evidence was all in, respondents moved for a directed verdict, and after this was refused and the cause submitted to the jury, a verdict was returned finding the minors "to be dependent and neglected, or delinquent children." On the basis of said verdict, the court thereafter entered judgment placing the children in the permanent custody of the Department of Public Welfare for care and maintenance and with full authority to find suitable adoptive homes for them and to effect their adoption. After the court had entered its order overruling respondents' motion for a new trial, and they gave notice of appeal, it entered a supplemental order "Nunc Pro Tunc" directing that, pending the determination of this appeal, the children re·

main in the Public Welfare Department's custody, but that no proceedings be instituted for their adoption.

The only argument presented herein is in respondent's behalf in support of their position that the trial court erred in overruling their motion for a directed verdict and in admitting the evidence herein referred to, concerning the condition of the children, and the Sweet home, before they were temporarily taken from respondents in 1955, more than one year before the commencement of the present proceedings. The County Attorney, as counsel for the petitioner, has specifically waived the filing of a brief on her behalf.

■ In respondents' argument concerning the alleged error in the overruling of the motion for directed verdict, they do not claim that the undisputed fact that the Sweet boys, Ray and Frankie, took money from the service station, as hereinbefore noted, would not support the jury's verdict as to their delinquency; but they say there is not an iota of evidence as to any of the other children being delinquent, dependent, or lacking in parental care. On the basis of this representation of the evidence, they say it was error for the court to submit to the jury the matter of the custody of the other children, and that, instead, the court should have sustained their motion and entered judgment leaving the children's custody in them. They further say that the court or jury had a right to determine that the two boys, Ray and Frankie, were delinquent children, and, that if determined to be responsible for their acts, to try them as juvenile delinquents, and, if adjudged to be such, to order them sent to a Boy's Training School during their minority. They further say, however, that the statutes under which the present proceedings were brought, Tit. 10 O.S.1951 § 101 et seq., do not contemplate placing with the Public Welfare Department for adoption, children who are juvenile criminals. In view of such admission of the tendency of the evidence to show the delinquency of two of the children, and respondents' tacit concession that the Juvenile

Court, in the 1955 proceedings, was justified in temporarily depriving them of custody until they could clean and improve their home and begin caring for the children in a manner conforming more nearly to recognized, and currently accepted standards of health and hygiene, and in further consideration of the statement of Mrs. Johnson (while testifying in support of her petition) that the Sweet home " * * was back as bad as it ever was, and the children's condition was back", we do not understand the question of whether there is any evidence reasonably tending to support the jury's verdict (and a judgment in proper accord therewith) is now before us.

In the part of the evidence (concerning the condition of the respondents' home and children prior to the 1955 proceedings) said to be irrelevant as to conditions existing in 1956 (when the present proceedings were instituted) Mrs. Johnson testified, in substance, to certain facts disclosed by the investigation she had previously completed, contemplated to show that the Sweet children and home did not have the proper care.

■ Mr. Hall, principal of the North Enid school, which the older children attended during the 1954–1955 school term, as aforesaid, was also allowed to testify, among other things, as to the condition in which said children came to school. It is unnecessary to detail all the testimony concerning the condition of the Sweet home before it was cleaned and improved in 1955, or of the Sweet children about the same time, and before the court ordered them taken from their parents temporarily. Suffice it to say, the record tends to show that the respondents thereafter improved their ways and home facilities sufficiently that the court apparently felt fully warranted in returning the children to them; and the record is devoid of any specific fact, or set of facts, sufficient to establish that the changes which occurred immediately prior to said custody restoration, have not continued as a part of the family's

present mode of life. As said in 67 C.J.S. Parent and Child § 12, at page 652 and note 46:

"It is not the past history of the case but present considerations affecting the happiness and welfare of the child which control."

In this connection consider also Roberts v. Biggs, Okl., 272 P.2d 438.

■ Disregarding the inadmissible testimony and all references to it in the record, Mrs. Johnson was the only witness who gave testimony indicating anything undesirable about the way respondents have provided for the physical needs of the children, since that time. She admitted having subsequently been in the Sweet home on only one occasion and that was after Ray and Frankie had been "picked up" by the police, when Mrs. Sweet explained that her worry over the children had affected her housecleaning. Mrs. Johnson also testified about seeing a "leftover" bowl of cereal on the Sweet's dining table, but the testimony of the witness, Mrs. Nellie Spellman, indicated that, at least for their evening meal, the Sweet family have cooked food instead of cereals and uncooked food. The evidence is undisputed that the children are healthy and that they are getting the benefit of crude bath facilities and a washing machine that Mr. Sweet has provided, despite the absence of any public utility, except electricity, inside the house. All of the witnesses questioned concerning the matter, agreed that the children here involved could not be regarded as "dependent." There is nothing to indicate that any of them are "delinquent", except the hereinbefore described episode involving Ray and Frankie, only. As respects the determination of whether the children are "neglected", the word "neglect" has been defined as the disregard of duty, owing to indifference or wilfulness. See In re Masters, 165 Ohio St. 503, 137 N.E.2d 752, 755.

The principal fault, if it be one, of respondents in caring for their children at the present time is (according to the testimony) that they are "too easy" with them. The evidence indicates that Mr. Sweet is not a strict disciplinarian and that he tries to correct the children by reasoning with them, rather than punishing them. We think it might be inferred therefrom that he doesn't believe in corporal punishment, but we think the evidence falls short of proving that he has wilfully or indifferently disregarded his duty towards them. On the other hand, we think the testimony concerning the time, money and effort that he has expended to make restitution of the aforementioned service station's missing funds, to bring his house up to the requirements of the Juvenile Court in 1955, and to assure his children's uninterrupted schooling for the year 1955–1956 by moving the family to Helena, bespeaks his concern and regard for his duties toward his family, rather than indifference or disregard for them.

■■ Some of the salient principles that have descended to us from the common law (In re Hudson, Wash., 126 P.2d 765; 39 Am.Jur., "Parent and Child", sec. 18) and been repeatedly recognized and adhered to by this court are as hereinafter shown. Parents have by nature, as well as by law, the legal right to the custody of their minor children (Bishop v. Benear, 132 Okl. 116, 270 P. 569) and, by reason of this, as well as the importance of the influence and protection afforded by parental affection to the best interests of children, especially those of tender years, in respect to their temporal, mental and moral welfare, (where such affection is manifest) it is presumed, in the absence of a strong and clear showing to the contrary, that their best interests are served by letting them remain with their parents. See Neet v. Neet, 198 Okl. 386, 179 P.2d 120; Hollingsworth v. Kohler, Tex. Civ.App., 195 S.W.2d 563; 67 C.J.S. Parent and Child § 12 supra, page 650, note 28; 39 Am.Jur., supra, secs. 16, 26. In Roberts v. Biggs, supra, this court quoted the following from Risting v. Sparboe, 179 Iowa 1133, 162 N.W. 592, 594, L.R.A.1917E, 318:

"Human experience has demonstrated that children ordinarily will be best cared for by those bound to them by the ties of nature, 'bone of their bone and flesh of their flesh.'

"Something more than the material things of life is essential to the nurture of a child, and that something is the father's and the mother's love, or as near its equivalent as may be. Recognizing this, the law raises a strong presumption that the child's welfare will be best subserved in the care and control of parents, and in every case a showing of such relationship, in the absence of anything more, makes out a prima facie case for parents claiming the custody of their children. 'Indeed', as said in one case, 'this presumption is essential to the maintenance of society, for without it man would be denaturalized, the ties of family broken, the instincts of humanity stifled, and one of the strongest incentives to the propagation and continuance of the human race destroyed." [272 P.2d 440.]

In Morris v. Morris, 81 Okl. 222, 198 P. 70, 72, this court said:

"Parental affection is a child's richest heritage, it is nature's shield against harm to the child, and should be strongly weighed against before its happiness and the molding of its life and character be consigned to others."

"To say that the parent has the right to rear his child in decent poverty is but to acknowledge that the right to share the lot of those of whom the child is part is more fundamental than the measure of the lot itself." Reynolds v. Davidow, 200 Miss. 480, 27 So.2d 691, 692.

■■ Giving the "welfare" of children the important place it has in determining who shall have their custody "was never intended to penalize parents because they may not be financially able to provide their children with the comforts and advantages more fortunate parents might provide for them." See In re Bourquin, 88 Mont. 118, 290 P. 250, 251. And that requirement is generally "satisfied if the parents are honest and respectable, with a disposition and capacity to maintain and educate the child." 67 C.J.S. Parent and Child § 12 supra, p. 659. To justify the courts in depriving parents of the care and custody of their own children, the parents' special unfitness, must be shown by evidence that is clear and conclusive and sufficient to make it appear that the necessity for doing so is imperative. And, in attempting to prove the "special unfitness" referred to, it is not enough to show that the parents have bad habits or faults of character. It must be established that their condition in life and character and habits are such that provision for the children's ordinary comfort and contentment, or their intellectual or moral development, cannot reasonably be expected at their hands. See House v. House, 207 Okl. 238, 249 P.2d 113; Goertzen v. Goertzen, 194 Okl. 207, 148 P.2d 982; Sherrick v. Butler, 175 Okl. 538, 53 P.2d 1097.

■ As we think the evidence, as a whole, and without regard to the inadmissible testimony we have referred to, was, in view of the burden of proof in such matters, insufficient to show that any of the children, with the possible exception of Ray and Frankie, were delinquent, dependent or neglected within the meaning of the statute, supra, we can only conclude that the jury was influenced in arriving at its verdict by said inadmissible testimony. Consequently, we have determined that, on account of said error, the trial court should have sustained respondents' motion for a new trial. Accordingly, its judgment is hereby reversed, with directions to grant respondents a new trial.

WELCH, C. J., and CORN, V. C. J., and HALLEY, JOHNSON, WILLIAMS, JACKSON and CARLILE, JJ., concur.