Robert Edward PRICE, Appellant,

v.

James and Wanda PRICE, Appellees.

No. 50354.

Supreme Court of Oklahoma.

Nov. 1, 1977.

Rehearing Denied Jan. 25, 1978.

Don Cooke, Miskovsky, Sullivan & Miskovsky, Oklahoma City, for appellees.

Larry H. Moon, Moon & Price, Poteau, for appellant.

WILLIAMS, Justice.

Appellees, paternal grandparents, filed a petition seeking to have the minor children here involved declared dependent and neglected and asking for their custody. The court adjudicated the children to be dependent and neglected and in the same order granted grandparents' request for custody. The natural father appeals to this court.

In 1973, the father and mother were divorced. The decree of divorce gave the mother custody of the children, with reasonable visiting rights granted to the father. Within a month after the divorce, the mother voluntarily relinquished custody and the father took the children to his parents (grandparents) requesting they care for them temporarily while he was working in another state. Generally he visited his children a couple of times a month, and took them on outings and to lunch and bought them gifts. There is no evidence he abandoned the children.

In January of 1976, father notified grandparents he was remarrying and would have a home in which to care for his children and that he intended to move them as soon as possible. Soon after, grandparents filed their petition alleging neither the father nor mother had contributed any funds for the children's support, that they did not provide proper parental care and were unfit to provide the same. After the petition was filed but before the hearing the natural mother died.

The trial court conducted one hearing, overruled father's demurrer to the evidence, declared children to be dependent and neglected, made them wards of the court and gave custody to the grandparents.

Father's appeal consists of two basic propositions: first the court erred in finding evidence sustained allegations of dependence and neglect in that grandparents failed to present a prima facie case and second, the court erred in the disposition by placing them in the grandparents' custody. We agree with both propositions.

A "dependent or neglected child" is defined by 10 O.S.1976 Supp. § 1101(d), which is part of the Delinquent, Dependent and Neglected Children Act. Dependent or neglected child is synonymous with "deprived child" as used in other acts and statutes.[1] Section 1101(d) provides:

"(d) The term "dependent or neglected child" means a child who is for any reason destitute, homeless or abandoned; or who is dependent upon the public for support; <u>or who has not the proper parental care or guardianship;</u> or whose home, by reason of neglect, cruelty, or depravity on the part of his parents,

1. See 10 O.S.1976 Supp. § 1101B.

guardian or other person in whose care it may be, is an unfit place for such child; or who is in need of special care and treatment because of his physical or mental condition, and his parents, guardian or legal custodian is unable to provide it; or whose parent or legal custodian for good cause desires to be relieved of his custody; or who is without necessary care or support through no fault of his parents, guardian or custodian. Provided, however, no child who, in good faith, is being provided with treatment and care by spiritual means alone in accordance with the tenets and practice of a recognized church or religious denomination by a duly accredited practitioner thereof shall, for that reason alone, be considered to be a dependent or neglected child under any provision of this act." (Underlining supplied).

Grandparents are claiming the children are dependent and neglected by virtue of the underlined phrase. This allegation is based primarily on the fact father contributed no money to the grandparents for the support of the children.

■ The divorce decree gave custody of the children to their natural mother. Upon her death, the children stood, in relation to the father and all the world, as if no decree of divorce had been entered. Custody inured to the father, the surviving parent.[2] Before this legal custody may be interfered with it must be affirmatively shown that the children come within the scope of the above mentioned act, in this case, by a finding the children are dependent or neglected as defined by the statute.

■ *In re Sweet*, 317 P.2d 231 (Okl. 1957) held in determining the custody of children it is not the past history of the case, but the present considerations which control. Whether these children were dependent or neglected at the time father deposited them with grandparents is not material. The trial court must decide whether they are dependent or neglected at the time the grandparents filed their petition. *Sweet* reiterates the Oklahoma rule of law that to justify depriving a father of custody of his children by declaring them dependent or neglected, it is not enough to show he had bad habits or faults of character. The mere fact that a child might be cared for better by the grandparents is not sufficient to deprive the father of his right to custody of the children.[3]

■ In determining whether a child is "neglected", the word, neglect, is defined as the disregard of duty, owing to indifference or wilfulness.[4] In *In re Vilas*, 475 P.2d 615 (Okl.1970) the mother of the child placed her with friends purely as a result of a long and close personal relationship between the family and these friends. This court, in reversing the trial court's finding of dependency and neglect, stated this could not be construed as a renunciation of the child, or as evidencing a lack of interest in her welfare.

Grandparents cite us to several factually distinguishable cases. *In re Davis*, 206 Okl. 405, 244 P.2d 555 (1952), involved a child who was dependent on the public for support at the time he was declared to be dependent and neglected. Except for the charity provided by the State of Oklahoma the child was destitute, homeless and abandoned. This is not true in the present case. Grandparents further rely on *Russell v. Russell*, 208 Okl. 41, 253 P.2d 136 (1953). This case was not an action to declare children dependent or neglected but rather an action to modify a divorce decree, wherein court had previously awarded child to grandparents.

■ Ordinarily in any type of custody proceeding the opinion of the trial judge who saw the witnesses and observed their demeanor while testifying is entitled to great weight.[5] But in a case of equitable

2. *Ingles v. Hodges*, 562 P.2d 845 (Okl.1977).

3. *Marshall v. Marshall*, 555 P.2d 598 (Okl. 1976).

4. *In re Vilas*, 475 P.2d 615, 617 (Okl.1970); *In re Sweet*, 317 P.2d 231 (Okl.1957).

5. *Gibson v. Dorris*, 386 P.2d 186 (Okl.1963).

cognizance, the Supreme Court may weigh the evidence and enter such judgment as trial court should have rendered.[6]

Here the issue is whether trial court was correct in finding the children were not receiving proper parental care. Evidence of neglect of the father to make suitable provision for the children's welfare and his general fitness to care for the child are elements for consideration in determining this issue.[7] The mere circumstance that the children were enjoying proper care in the home of another and were not therefore homeless, does not necessarily mean they were receiving proper parental care. However, the fact children were placed by the father in the home of his parents, part of the family, rather than with third parties as in *In re Reed*, 189 Okl. 389, 117 P.2d 503 (1941), certainly is evidence of parental concern. The evidence presented by the grandparents was generally aimed at a showing they were fit parties to have custody of the children. This is properly a part of the dispositional phase of such a hearing and is not material to a determination of dependency or neglect.

Father's evidence showed he was interested in his children. He visited them, took them out for meals and bought them gifts. He has ample income to support them where they will not become dependent on the state. He has a home and a wife. He was assured of the children's care when he left them in the hands of his parents. Surely, this type of concern for their lives is not a sign of neglect. Although he never gave the grandparents financial help, they never requested any. We think the evidence as a whole was insufficient to show the children were dependent or neglected.

We, therefore, reverse the trial court's finding that the children were dependent and neglected as defined by the act.

REVERSED AND REMANDED WITH DIRECTIONS TO DELIVER THE CHILDREN TO THEIR FATHER.

HODGES, C. J., LAVENDER, V. C. J., and DAVISON, IRWIN, BERRY and BARNES, JJ., concur.

SIMMS and DOOLIN, JJ., concur specially.

DOOLIN, Justice, concurring specially.

I agree with the majority that the evidence does not support a finding the children were dependent and neglected as defined by the Act. In addition to the above basis for reversal, I find further error in the cavalier manner in which the hearing was conducted.

The law in Oklahoma requires a bifurcated juvenile hearing. The first phase is an adjudicatory hearing to determine whether the allegations of a petition are supported by the evidence and whether a child should be adjudged to be a ward of the court; the second phase is that of disposition, to determine what order of disposition should be made with respect to a child adjudged to be a ward of the court.[1]

The hearing in this case was not bifurcated. The court heard evidence as to both issues at the same time. The order declared the children to be wards of the court and determined custody. There was no opportunity for any independent study to be made on behalf of the interests of the children, or for any of the other guidelines of 10 O.S.1971, § 1115[2] to be met. A two

---

6. *Matter of Reyna*, 546 P.2d 622, 625 (Okl. 1976).

7. *In re Reed*, 189 Okl. 389, 117 P.2d 503 (1941).

1. See 10 O.S.1976 Supp. § 1101(f), (g); Couch, "Delinquency and the Unholy Alliance; A Formula For Success?" 48 OBJ Quarterly 137, 144 (1977).

2. Section 1115 provides:
   "Dispositional hearings—Additional reports or evidence.—(a) After making an order of ad-

judication, the court shall hold a dispositional hearing, at which all evidence helpful in determining the proper disposition best serving the interest of the child and the public, including oral and written reports, may be admitted and may be relied upon to the extent of its probative value, even though not competent for the purposes of the adjudicatory hearing.

   (b) Before making an order of disposition, the court shall advise the District Attorney, the parents, guardian, custodian or responsible relative, or their counsel, of the factual contents

phase trial gives the court an opportunity to request independent evaluation of the circumstances as a factor for it to consider in making a disposition.[3]

The order herein giving custody to grandparents is in effect a termination of father's parental rights without statutory and due process procedural protections. See 10 O.S. 1976 Supp. § 1130.[4] A hearing such as the court held here circumvents and defeats the legislative policy of this state evidenced by our children's code.

Additionally we note the trial court also ignored 10 O.S.1971, § 24 which provides:

"Appointment of counsel—Compensation.—(a) When it appears to the court that the minor or his parent or guardian desires counsel but is indigent and cannot for that reason employ counsel, the court shall appoint counsel. *In any case in which it appears to the court that there is such a conflict of interest between a parent or guardian and child that one attorney could not properly represent both, the court may appoint counsel, in addition to counsel already employed* by a parent or guardian or appointed by the court to represent the minor or parent or guardian, provided that in all counties having Public Defenders, said Public Defenders shall assume the duties of representation in proceedings such as above.

(b) In all cases other than in counties where Public Defenders are appointed, the court shall, where counsel is appointed and assigned allow and direct to be paid by the county in which the proceedings or trial is held, out of the court fund of said county, a reasonable and just compensation to the attorney or attorneys for such services as they may render. Provided, that such attorney shall not be paid a sum to exceed One Hundred Dollars ($100.00) for services rendered in preliminary proceedings, and such compensation shall not exceed Two Hundred Fifty Dollars ($250.00) for services rendered during trial." (Emphasis supplied).

An agency of the state did not institute this proceeding; the grandparents did. No counsel was appointed.

Once a child is declared to be dependent or neglected and made a ward of the court, the state becomes vitally interested in such a child and stands in the position of "parens patriae."[5] *In Matter of Paul,* 555 P.2d 603, 604 (Okl.1976) held: "Once that adjudication has been made, and the child and his life is subject to the juvenile system, the court becomes more the friend of the child with the intent to help him." It is incum-

and the conclusion of reports prepared for the use of the court and considered by it, and afford fair opportunity, if requested, to controvert them.

(c) On its own motion or that of the District Attorney, or of the parent, guardian, custodian, responsible relative or counsel, the court may adjourn the hearing for a reasonable period to receive reports or other evidence and, in such event, shall make an appropriate order for detention of the child, or his release from detention subject to supervision by the court, during the period of the continuance. In scheduling investigations and hearings, the court shall give priority to proceedings in which a child is in detention, or has otherwise been removed from his home, before an order of disposition has been made."

3. See *Matter of Paul,* 555 P.2d 603 (Okl.1976); *In re Marriage of Tweeten,* 563 P.2d 1141 (Mont.1977).

4. For example Section 1130(A)(3) provides a court may terminate rights of a parent to a child by:

"A finding that a parent who is entitled to custody of the child:
a. * * *
b. * * *
c. is unfit by reason of debauchery, intoxication, or habitual use of narcotic drugs, or repeated lewd or lascivious behavior or other conduct that is detrimental to the physical or mental health or morals of the child, and the parent has failed to show that the conditions have been corrected within a period of six (6) months after the child, or children, were adjudged dependent or neglected and a permanent termination of parental custody of the child, or children, is necessary to protect its physical or mental health or morals; provided further, that the court may extend the time in which such parent may show the condition has been corrected, if, in the judgment of the court, such extension of time would be in the best interest of the child or children."

5. See *Matter of Adoption of Morrison,* 560 P.2d 240 (Okl.1976).

bent upon the state, once the child is made a ward of the court, to either enter the proceeding or to provide someone to represent the interests of the child at the dispositional phase of the hearing.

In this proceeding the state was not made a party and the court did not appoint anyone to represent the children. Such a proceeding should not stand. Judicial parsimony becomes judicial inertia if this court chooses to ignore blatant disregard for litigants rights because it is not a necessary adjudication in the appeal.[6]

Once a child is declared to be a ward of the court, the state may not be excused attendance at a subsequent dispositional hearing. It is the state's responsibility to protect the interests of such a minor.[7] The presence of appointed counsel, public defender, guardian ad litem, or other counsel for the state is mandated at a dispositional hearing.

There is some authority representation might be required at the adjudicatory hearing as well. If the state has initiated the proceeding, the presence of the representative of the state has been held to protect the interest of the child.[8] However, if the state is not initially involved, the court certainly may appoint counsel to represent the child from the outset. This is especially indicated in an intra-family quarrel such as this. Three rights or interests must be considered, first that of the child; second, that of the parent and third, that of those who for years discharged some of the obligations of parents—in this case the latter being the grandparents.[9] All three of these categories have a right to representation

and where the minor involved is not capable of demanding counsel it is prudent for the trial judge to require it. Although this might be a financial burden on a smaller county, this may certainly be considered a public responsibility of the Oklahoma Bar.[10]

If a child is not represented by individual counsel, each attorney presents his arguments from the viewpoint of his client, with the child caught in the middle. Beneath each side's argument in terms of the best interests of the children, lies the desire to win the case for his client—who is not the child. If the court appoints an attorney for the child, testimony is presented and cross-examination done by an advocate who is truly interested only in the welfare of the child. While the legal precedent for the right of children to be represented by counsel is expressly limited to criminal hearings, the Supreme Court in *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1977) recognized children have legal rights entitled to the protection of representation by counsel. The protection of due process has been afforded adults in noncriminal proceedings; it is time to extend this same protection to children.[11]

SIMMS, Justice, specially concurring.

I also agree with the majority that the evidence was insufficient to support the trial court's adjudication of these children as dependent and neglected children under our Juvenile Code.

Additionally, I agree with Justice Doolin's observation that the trial court erred in failing to separate the adjudicatory and

---

6. This argument was not presented by either party and it is not determinative of this appeal. However, where a child has no representation he has no opportunity to submit the question to this court. Such a fundamental right may not be waived by the other parties involved.

7. *Matter of Schatz*, 560 P.2d 182 (Okl.1977); Also see in *Matter of F.*, 30 A.D.2d 933, 293 N.Y.S.2d 873 (1968).

8. *In re Custody of Minor*, 102 U.S.App.D.C. 94, 250 F.2d 419 (1957); *Stubben v. Flathead County Department of Welfare*, 556 P.2d 904 (Mont.1976).

9. *Gibson v. Dorris*, 386 P.2d 186 (Okl.1963).

10. See Uniform Juvenile Court Act § 26 which states in any proceeding under that act "counsel must be provided for a child not represented by his parent, guardian or custodian." Also see 4 Op.Atty.Gen. 441, No. 71–407 (1972); 10 O.S.1971, § 24(a).

11. Grumet, "The Plaintive Plaintiffs; Victims of the Battered Child Syndrome." 4 Fam.L.Q. 296, 314 (1970).

dispositional phases of this proceeding. The statutory requirement of a bifurcated procedure is a matter of jurisdictional significance, it is mandatory and cannot be overlooked by our courts. At the adjudicatory hearing the court must determine whether the allegations of the petition are true and whether the child comes within the purview of the Code. If so, and if the court finds that the child's best interests would be served, then the court shall sustain the petition and make an order of adjudication setting forth whether the child is delinquent, dependent and neglected or in need of supervision and make the child a ward of the court (10 O.S.1971, § 1114.).

Only after the adjudication may the court proceed in the matter of ascertaining the proper disposition of the child (10 O.S.1971, §§ 1115, 1116); because it is only *after* making the adjudication that the court has jurisdiction over the child (10 O.S.Supp. 1972, § 1102). It is the adjudicatory hearing which determines whether or not the state, through its juvenile court, shall interfere with the child and his life.

Because of the tremendous importance that the outcome of the adjudicatory hearing will have upon a child and his family, I must go one step further than Justice Doolin's suggestion that the court appoint counsel for children at the dispositional hearings, and urge such appointment at the adjudicatory hearing. I believe that representation of the child's interests at only the dispositional hearing, while certainly helpful, is too little and too late.