Dwight L. FAST, Appellee,

v.

Antoinetts Joan FAST, Appellant.

No. 69817.

Court of Appeals of Oklahoma,
Division No. 1.

May 30, 1989.

Rehearing Denied July 18, 1989.

Certiorari Denied Feb. 13, 1990.

Sharon L. Corbitt, Tulsa, for appellant.

Dennis Shook, Wagoner, for appellee.

## MEMORANDUM OPINION

HANSEN, Judge:

The parties to this divorce action entered into a joint custody plan in October of 1986 at the time the court granted their divorce. On May 29, 1987 Mother filed an application to terminate the joint custody arrangement based on a material, permanent and substantial change of condition alleging it was no longer in the best interest of their minor child for such a plan to continue. Mother appeals the trial court's denial of her application.

The original decree granting custody to both parties jointly, incorporated a joint custody plan, agreed to by both parties. The plan provided for alternated physical custody on a three month schedule. It further set out very specifically the obligations of each party.

Mother's application to terminate the joint custody alleged total loss of communication between the parties, verbal abuse, and fiscal irresponsibility by Father among other things. She stated in her application she has remarried and no longer works outside the home, thus she would be able to be a full time caretaker of the child. She requested the court to place custody of the child with her.[1]

■ The Oklahoma Supreme Court has not generated any specific policies governing the future of the very sensitive area of joint custody.[2] In *Hornbeck v. Hornbeck*, 702 P.2d 42 (Okla.1985), the Court made it clear that a trial court does have the power under 12 O.S.1983 Supp, § 1275.4 [3] to order joint custody even though one parent does not agree to abide by the plan. However, many other jurisdictions have found that a cardinal criterion for an award of joint custody is the agreement of the parties and

---

1. Mother also filed a contempt citation against Father for failure to abide by the divorce decree. She later dismissed the citation.

2. See *Divorce: Joint Custody in Oklahoma: Beyond Hornbeck*, 39 O.L.R. 107 (1986).

3. The pertinent parts of this statute provide: "A. In awarding the custody of a minor unmarried child or in appointing a general guardian for said child, the court shall consider what appears to be in the best interests of the physical and mental and moral welfare of the child.

B. The court, pursuant to the provisions of subsection A of this section, may grant the care, custody, and control of a child to either parent or to the parents jointly.
For the purposes of this section, the terms joint custody and joint care, custody, and control mean the sharing by parents in all or some of the aspects of physical and legal care, custody, and control of their children.
C. If either or both parents have requested joint custody, said parents shall file with the court their plans for the exercise of joint care, custody and control of their child. The parents of the child may submit a plan jointly, or either parent or both parents may submit

their mutual ability to co-operate in reaching shared decisions in matters affecting the child's welfare.[4] In this respect we find that a party's opposition to joint custody is in effect the antithesis of the concept of joint custody. To force joint custody on an unwilling parent should give a trial court pause.

 *Hornbeck* involved a motion to modify a divorce decree to impose a joint custody agreement. The present case differs from *Hornbeck* only in that it involves a motion to modify and terminate a joint custody arrangement. *Hornbeck* provides guidance as to the elements the Supreme Court considers to be factors in determining whether custody should be shared jointly. We hold these same factors must be considered in determining whether a movant is entitled to a termination of a previous joint custody arrangement.

 *Hornbeck* tells us that joint custody should only be considered where certain circumstances are present. These circumstances include: the likelihood of parental cooperation in matters affecting the child; a capacity to provide equally beneficial home environments; and that the situation will not be unduly disruptive of other important aspects of the child's life. The Supreme Court therein recognized other factors as set out previously in *Rice v. Rice*, 603 P.2d 1125, 1129 (Okla.1979) (footnote 9).[5]

A review of the transcript of testimony of the hearing on Mother's application reveals an atmosphere of hostility and uncooperative behavior as well as a lack of agreement between the parties as to proper discipline and behavior of the child. Religious and philosophical differences exacerbate the already schismatic relationship. In fact, Father's brief does not direct our attention to any area of harmony whatsoever. It appears to this Court that this custody arrangement is a textbook example of the impropriety of a joint custody order.

Certainly the best interests of the child are paramount. Mother presented the testimony of a psychologist who believed Mother was attuned emotionally, and very sensitive to the child's needs. She felt the situation as it stood was very stressful to the child, and that if it continued, he could have a severe personality disorder. There was no showing on behalf of Father that the best interests of the child dictate continuance of the joint arrangement.

 Ordinarily in any type of custody proceeding, the opinion of the trial judge who saw the witnesses and observed their demeanor while testifying is entitled to great weight. But in a divorce action, a case of equitable cognizance, this Court may weigh the evidence and enter such judgment as the trial court should have rendered. *Price v. Price*, 573 P.2d 251 (Okla.1978).

separate plans. Any plan shall include but is not limited to provisions detailing the physical living arrangements for the child, child support obligations, medical and dental care for the child, school placement, and visitation rights. A plan shall be accompanied by an affidavit signed by each parent stating that said parent agrees to the plan and will abide by its terms. The plan and affidavit shall be filed with the petition for a divorce or legal separation or after said petition is filed."

4. See, Annot., 17 A.L.R. 4th 1013 (1982).

5. "a) The parties have agreed to joint custody or there has been a prior order for joint custody and experience has shown that the benefits to the child exceed any detriments.

b) The parties have demonstrated that they are capable of reaching shared decisions in

the child's best interests and are able to communicate and to give priority to the child's welfare.

c) The logistics are such that there is no substantial disruption of the child's routine, schooling, association with friends, religious training, etc. Ordinarily this means close geographical proximity of both parents or a 'bird nest' arrangement.

d) There is no indication that the psychological and emotional needs and development of the child will suffer due to a particular joint custodial arrangement.

e) The work hours and routine of both parents are such that child care will be suitable at both homes.

f) Joint custody is in accord with the child's wishes and he does not have a strong opposition to such an arrangement."

■ Under these circumstances we find the trial court abused its discretion in refusing to terminate the joint custody arrangement. Father filed no pleading in response to Mother's application, thus we assume he is not seeking an order placing sole custody of the minor child with him. Accordingly, we reverse the order and remand with directions to grant Mother's application to terminate the joint custody agreement and to place sole custody of the minor child with her. The court is further directed to conduct a hearing to determine child support and to set liberal visitation rights for Father.

REVERSED AND REMANDED WITH DIRECTIONS.

HUNTER, P.J., and MacGUIGAN, J., concur.