2010 OK CIV APP 104

In re the Marriage of DOAN–UYEN
THI LE, Petitioner/Appellee,

v.

THANG Q. NGUYEN,
Respondent/Appellant.

No. 105,919.

Court of Civil Appeals of Oklahoma,
Division No. 3.

Jan. 22, 2010.

Rehearing Denied Sept. 16, 2010.

M. Jean Holmes and Ronald M. Fraley, Tulsa, OK, for Appellant.

Shelton L. Benedict, Tulsa, OK, for Appellee.

CAROL M. HANSEN, Presiding Judge.

¶ 1 In this post-divorce proceeding, Appellant/Father, Thang Q. Nguyen (Father), seeks review of the trial court's order [1] granting the relocation request of Appellee/Mother, Doan–Uyen Thi Le (Mother), allowing her to move with the couple's two children from Oklahoma to New York, and [2] denying the requests of both Mother and Father that joint custody be terminated.

¶ 2 Mother and Father were divorced in September 2005. The couple had two children during the marriage, a son born in 1999 and a daughter born in 2000. The consent divorce decree implemented the Joint Child Custody Plan submitted by the parties, with Mother serving as the primary custodial parent, while Father exercised generous visitation, seeing his children as much as four times per week.

¶ 3 On August 23, 2007, Mother filed a notice of relocation due to her engagement and planned second marriage to a man living in New York. Mother requested to move with the children to New York, which would necessitate changes in the existing visitation format. Father filed his objection to the relocation on September 4, 2007.

¶ 4 Shortly thereafter, Father filed a motion to terminate joint custody and to award him sole custody of the children, which would allow the children to remain with him in Oklahoma. Mother responded with her own motion to terminate joint custody, citing several instances of the parents' failure to get along and communicate. Mother's second marriage took place on November 19, 2007, though neither she nor the children had moved at the time of the hearing.

¶ 5 On February 15, 2008, the trial court held a hearing on Mother's relocation notice and the corresponding objections and respon-

sive motions to terminate joint custody. The court heard testimony from the parties, as well as several other witnesses, including the children's soccer coach and aunt. The trial court granted Mother's motion to relocate, denied both parents' requests for termination of the joint custody arrangement, and set out Father's visitation. The trial court's written order of May 1, 2008 memorialized the ruling the court made at the conclusion of the February 15, 2008 hearing. From this order granting Mother's relocation motion and denying all other motions, Father appeals.

¶ 6 We will not disturb the trial court's custody decision unless we find an abuse of discretion or that the decision is clearly contrary to the weight of the evidence. *Daniel v. Daniel*, 2001 OK 117, ¶ 21, 42 P.3d 863, 871. The trial court's decision which allowed Mother's request to relocate with the children to New York is also reviewed by the *Daniel* standard. *Moore v. Moore*, 2009 OK CIV APP 27, ¶ 7, 209 P.3d 318, 320 (citing *Daniel v. Daniel*, 42 P.3d 863, 871). The burden is upon Father, as the appealing party, to demonstrate the trial court's decision was erroneous and contrary to the children's best interests. *Daniel*, 42 P.3d at 871.

¶ 7 As a procedural matter, Father contends the trial court considered the issues of this case in an improper order. He claims the court should not have made the decision about Mother's relocation notice prior to terminating the joint custody arrangement and awarding him custody of the two children.

¶ 8 Neither 43 O.S.2001 § 109, which provides the authority for joint custody, nor 43 O.S. Supp.2002 § 112.3, which provides for relocation notification and approval, expressly directs the trial court in terms of which issue to address first. Nor does Father offer legal authority dictating custody decisions must precede relocation decisions. Section 112.3(I), which provides, "[a] proposed relocation of a child may be a factor in considering a change of custody," seems to indicate the two issues should be considered in conjunction with one another. The Court of Civil Appeals, in *Moore v. Moore*, 2009 OK CIV APP 27, 209 P.3d 318, reached a similar conclusion. There, the appellant argued the relocation issue should be tried first pursuant to § 112.3(K), but the Court, finding no authority for that position, held there was no abuse of discretion in joining the issues for trial.

¶ 9 In any event, there is nothing in the trial court's decision to suggest the order in which the court considered the two issues. While the court, speaking from the bench, first granted the relocation motion, and then denied the parties' motions to terminate joint custody, we cannot assume anything about the order in which the court cognitively considered the two matters. We further note there is nothing in the record indicating Father requested the termination of joint custody motions be considered separately or in any particular order, nor a request or objection asking for clarification of the order in which the court considered the issues. We find no merit in this proposition of error.

¶ 10 Father also asserts granting the relocation request should be reversed and remanded because he should have been awarded full custody. This is essentially a best interests argument on Father's part. Under § 112.3(K)—"The relocating person has the burden of proof that the proposed relocation is made in good faith. If that burden of proof is met, the burden shifts to the nonrelocating person to show that the proposed relocation is not in the best interest of the child."

¶ 11 Father does not claim Mother's move is made in bad faith. Mother's new husband lives and works in New York. There was no evidence presented to indicate there was any effort on Mother's part to remove the children to New York for any purpose other than to be with her husband. There was even some evidence Mother and her new spouse explored the possibility of living in Oklahoma, but the husband's opportunities and employment were better served by his staying in New York, where he had existing employment and a home.

¶ 12 With Mother making a *prima facie* case relocation was in good faith, the burden of proof then shifted to Father to show the move with Mother to New York would not be in the children's best interests. The court

has a statutory non-exhaustive list of considerations to address in determining whether relocation serves the children's best interests:

1. In reaching its decision regarding a proposed relocation, the court shall consider the following factors:

a. the nature, quality, extent of involvement, and duration of the child's relationship with the person proposing to relocate and with the nonrelocating person, siblings, and other significant persons in the child's life,

b. the age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child,

c. the feasibility of preserving the relationship between the nonrelocating person and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties,

d. the child's preference, taking into consideration the age and maturity of the child,

e. whether there is an established pattern of conduct of the person seeking the relocation, either to promote or thwart the relationship of the child and the nonrelocating person,

f. whether the relocation of the child will enhance the general quality of life for both the custodial party seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity,

g. the reasons of each person for seeking or opposing the relocation, and

h. any other factor affecting the best interest of the child.

43 O.S. Supp.2002 § 112.3(J).

¶ 13 While both parents have a strong and nurturing influence on these children, the record revealed Mother was the primary custodial parent. The children spent the majority of their overnights with Mother and the record further revealed Mother was responsible for the majority of the mundane, but essential, tasks of day-to-day parenting, taking the children to the doctor, getting them ready for bed, helping them with school. Father's role in his children's lives is significant, as he addressed so many of the extra-curricular needs of his children, especially with regard to sports. Father also spent considerable time with the children, often picked them up from school and provided tutoring. It is precisely the positive and nurturing influence given by both parents that make a case such as this so difficult, a fact the court acknowledged in rendering its decision.

¶ 14 The nature and quality of the children's relationship with Mother weighed in favor of her continued role as their primary custodial parent. The children continued to grow and thrive under her influence and there was no indication this would cease to be the case after her move. There was evidence in the record Mother attempted to make the move as smooth as possible, even putting off moving until the children's school year concluded. Evidence was also presented showing that much of the Oklahoma based family support upon which both Mother and Father relied was in transition, with the children's maternal aunt and grandmother moving to Texas and the grandmother's deteriorating health. The support system for a single parent in Oklahoma was to be much more fragile than either parent had ever known, which may well have weighed in favor of the children moving with the parent most familiar with their day-to-day care.

¶ 15 While recognizing the expense of travel between Oklahoma and New York, the trial court considered and formulated a visitation plan with an emphasis on Father's visitation being longer in duration, though less frequent, in an effort to continue fostering the close and valuable relationship the children have with their Father.[1] The trial

---

1. Father was awarded visitation with the children during summer vacation, every spring break vacation, alternating Thanksgiving vacations and alternating Christmas vacations, with transportation costs to be split equally between the parents. The court also provided at the hearing that if Father travels to New York, or Mother to Oklahoma, for a visit during the other parent's custodial time with the children, the then-custodial parent must make the children

court's order specifically noted Father did not meet his shifting burden, to demonstrate relocation with Mother was not in the children's best interests. In considering the factors outlined in § 112.3(J), we do not find the trial court abused its discretion or made a decision contrary to the weight of the evidence in allowing Mother to relocate. In so holding, we in turn recognize the trial court's determination could be obviated by the trial court's determination regarding custody on remand.

■ ¶ 16 With regard to the trial court's denial of motions by both parties to end joint custody, we are persuaded by Father's contention the trial court erred. As we noted above, joint custody is governed by 43 O.S. 2001 § 109, which provides in subsections F and G[2] for modification or termination of joint custody upon the request of one or both parents, or whenever the court determines the best interests of the children dictate modification or termination of the joint custody. In general, the best interests of the children must be a paramount consideration when determining their custody and the parents' rights to visitation. *Daniel*, 42 P.3d at 871; 43 O.S.2001 § 109(A).

¶ 17 Father asserts the court erred in failing to terminate joint custody. He also argues he should have been awarded sole custody of the children. Father maintains there is no evidence to support these decisions and the trial court therefore erred in allowing joint custody to continue. In support of this assertion, Father points to several factors: [a] the mutual requests for termination of joint custody, [b] the evidence he and Mother were not cooperating effectively in implementing joint custody, and [c] the extreme difficulties in shared-parenting that would come with the move to New York.

¶ 18 At trial, both parties offered examples of distinct episodes during which they failed to effectively communicate and cooperate in parenting their two children. Mother presented evidence that Father failed to inform her of soccer practice and game schedules so that she was essentially cut out of the children's sporting activities, including tennis and karate. There was also evidence Mother called the police after Father misinterpreted a text message regarding certain dates he was supposed to keep the children while Mother was visiting her fiancé in New York. Father apparently understood he would have the children over the ensuing week, while Mother meant to convey only that Father would have the children a couple of extra days after his regularly scheduled weekend visitation. Mother also complained Father transferred the children to a different school without her knowledge or consent, to which Father responded that the two had discussed the matter and it was not done without Mother's knowledge.

¶ 19 For his part, Father presented evidence Mother failed to inform him when she was laid off and when the children did not have health insurance for a considerable period of time. During those times Mother continued to collect from Father support payments awarded specifically for payment of insurance and employment-related child care expenses.[3] Both parents also complained the other interfered with their respective communications with the children. In sum, there was considerable evidence parents failed to get along with regard to parenting issues.

¶ 20 However, in our review of a custody decision, we are obliged to consider all the evidence, including that which may indicate joint custody has had a positive impact on the children. There was also evidence parents' failure to communicate and cooperatively parent had manifested only recently, as the

---

available to the visiting parent, provided the visiting parent gives thirty days notice.

**2.** F. The court also may modify the terms of the plan for joint care, custody, and control upon the request of one parent. The court shall not modify the plan unless the modifications are in the best interests of the child.

G. 1. The court may terminate a joint custody decree upon the request of one or both of the

parents or whenever the court determines said decree is not in the best interests of the child.

**3.** The appealed-from order awarded Father $869.46 for overpayment of medical insurance premiums and child care expenses. There was no appeal from this element of the trial court's award.

court had not been called to intervene in the joint custody arrangement until Mother's relocation became an issue. There was further evidence the children were doing well with the input and care of both parents. So, despite the parents' communications shortcomings, up to a point in time they seem to have effectively parented and allowed each other access to the children without apparently infecting the children with their less-than-ideal relationship. The record also demonstrated that while Mother was perhaps not as inclined or involved in sports or religious education for the children as was Father, she was reasonably supportive of Father's efforts to involve the children in sports and church, despite the fact she was not always included in these activities.

¶ 21 As we have discussed, termination of joint custody is governed by § 109(G) [4]. As Mother's appellate brief points out, the language of § 109(G) guiding the trial court on termination of joint custody is permissive, using the word "may" instead of a word such as "shall" or "must." *Pierce v. Pierce,* 2001 OK 97, 39 P.3d 791. The statute makes clear the trial court is not required to terminate joint custody upon the request of both parents and that the child's best interests are the paramount concern. However, when the evidence is that joint custody is not working, and is not serving the children's best interests, "a material and substantive change of circumstance has occurred and the joint custody arrangement must be changed." *Daniel,* 42 P.3d at 870, ¶ 20. "Joint custody will not succeed without the cooperation of the parties." *Id.*

¶ 22 In arguing the trial court was correct in denying the parties' respective motions for termination of joint custody, Mother relies on *Kilpatrick v. Kilpatrick,* 2008 OK CIV APP 94, ¶ 13, 198 P.3d 406, 409, where the trial court denied the requests of both parents that joint custody be terminated. The Court of Civil Appeals affirmed the trial court's denial, holding:

> Joint custody is usually not appropriate where both parties object, because joint custody depends upon the agreement of

the parties and their mutual ability to cooperate in reaching shared decisions affecting the child's welfare. *Anderson v. Anderson,* 1990 OK CIV APP 23, 791 P.2d 116. A party's opposition to joint custody indicates his or her lack of willingness to cooperate, and "[t]o force joint custody on an unwilling parent should give a trial court pause." *Fast v. Fast,* 1989 OK CIV APP 31, ¶ 4, 787 P.2d 1288, 1290. Nevertheless, consideration must also be given to the positive effect, if any, that a joint custody plan has had on a child. Section 109(G) does not require termination of joint custody merely because one or both parents requests it; it provides that a trial court "may" terminate joint custody in such event. Ultimately, custodial decisions, even those involving termination of joint custody, are dependent upon the best interests of the child. Only when "joint custody is not working and it is not serving the child's best interests" is termination a "must." *Daniel,* 42 P.3d at 870, ¶ 20.

¶ 23 We are not unmindful that, despite significant cooperation and communication issues, Mother and Father seem to have managed to parent well-adjusted, academically-sound, happy and active children in the two years following their divorce. That being said, we are unpersuaded by the *Kilpatrick* Court's reasoning under the facts here and find that case to be distinguishable.

¶ 24 We first note the trial court in *Kilpatrick* "reluctantly determined that a modified joint custody plan was the best of imperfect alternatives." In making that determination, the trial court in *Kilpatrick* had the advantage of considerable testimony from several experts regarding the parties ability to co-parent. Here, the evidence was received from the parties, relatives and lay witnesses. The expert testimony in *Kilpatrick* was that joint custody could work "using a strong and experienced parenting coordinator." Here, the order appointing a parenting coordinator had expired and there is no indication further use of a parenting coordinator was contemplated. Further, there was evidence the parties had at times not followed the parenting coordinator's determinations or chose not to

4. Note 2, *supra*

consult the coordinator with problems because of the expense.

¶ 25 Here, the distance of separation will be a more complicating factor than it was in *Kilpatrick.* There, the mother lived in Northwest Arkansas, and the father lived in Northeast Oklahoma, which is reasonably proximate for driving purposes. In this matter, the distance will be a major impediment to the type of co-parenting which has, to this point, resulted in well-adjusted children. The evidence was that Father was intimately involved in the children's everyday life. Even with the significant periods of custody granted Father by the trial court, there is no evidence joint custody will be as successful in the future. To the contrary, the evidence is that Mother and Father will likely continue to have problems with cooperation and communication, with no intermediaries to facilitate compromise and accommodation. Under these circumstances, it is also likely it will be the children who suffer the consequences.

¶ 26 While § 109(G) gives trial courts discretion in joint custody determinations, "[t]o force joint custody on an unwilling parent should give a trial court pause." *Fast v. Fast,* 787 P.2d at 1290. The *Kilpatrick* Court, 188 P.3d at 409, recognized this and went to some lengths to explain why its holding was justified as an exception to that rule. In each of the cases cited by the Court in *Kilpatrick* in explaining its holding, joint custody was ended when the evidence showed the parties objected, they had problems with cooperation or communication, and the children would not be well served by continuation of joint custody.[5]

¶ 27 A cardinal criterion for continuing joint custody is the agreement of the parties and their mutual ability to cooperate. In this respect, a party's opposition to joint custody, in this case *both* parties' opposition, is in effect the antithesis of the concept of joint custody. Under such circumstances, and the considerable evidence reflecting the likelihood of continued parenting strife, it is not in the children's best interest to continue joint custody. The trial court abused its discretion by not granting the motions to terminate joint custody.

¶ 28 That portion of the trial court's order denying the parties' motions to terminate joint custody is REVERSED. The remainder of the order is AFFIRMED. This matter is REMANDED to the trial court with directions to terminate the joint custody and make an initial determination as to whom custody should be awarded based on the best interests of the children.

MITCHELL, C.J., concurs.

JOPLIN, J., concurs in part and dissents in part:

¶ 1 I respectfully dissent to the termination of joint custody. The statute guiding joint custody determinations is clearly permissive in its direction to the trial court, saying only that the court "may" terminate joint custody upon the request of one or both parents. 43 O.S. § 109(G). The record in this case demonstrated the parents could get along well enough to jointly parent the children and not draw the children into their conflict. Whether distance would improve the parents' cooperative skills or impair them is unknown based on the record provided and simply assuming distance would destroy the parents ability to co-parent is not supported by this record.

¶ 2 *Kilpatrick v. Kilpatrick,* 2008 OK CIV APP 94, 198 P.3d 406, clearly provides authority for maintaining joint custody over the objection of both parents. The majority's attempt to distinguish *Kilpatrick* regarding the use of expert testimony, a parenting coordinator and smaller geographical distance is not persuasive. There is no evidence this court lacked a clear understanding of the parenting relationship at issue or that the *Kilpatrick* court had a more clear or accurate understanding of the parenting relationship due to the use of expert testimony in that case. The presence of a strong parenting coordinator was needed to implement co-parenting in *Kilpatrick.* The parents in this case managed to co-parent, largely without incident, without the assistance of a parent-

---

5. *Accord, Moore v. Moore,* 2009 OK CIV APP 27, 209 P.3d 318; *White v. Polson,* 2001 OK CIV APP 88, 27 P.3d 488; *Boyd v. Boyd,* 1993 OK CIV APP 196, 867 P.2d 492.

ing coordinator, so that the absence of one in this case is not necessarily fatal to parents' ability to make joint decisions. The distance factor can also be marginalized with the effective use of a multitude of communication tools.

¶ 3 The trial court was in the best position to observe these parents, their witnesses, and consider the evidence and determined joint custody was preferable to all other alternatives available. *Manhart v. Manhart,* 1986 OK 12, 725 P.2d 1234, 1237. Because there is evidence to support the trial court's decision in this respect and the statute itself is permissive, I dissent to the majority's reversal of the trial court's joint custody determination. In all other respects, I concur.